**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George Evans HARP, Edwin R. Breaux, Jean Orsini, Willard Joseph Martin, Don Garriga Chapman and Elvin Edsel Haddock, Defendants-Appellants.**

**No. 74-1810.**

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1976.

Eric Welch, Atlanta, Ga. (Court appointed), for Harp.

Dennis M. Hall, Decatur, Ga. (Court appointed), for Breaux.

Fred Filsoof, Atlanta, Ga. (Court appointed), for Orsini.

Marvin Soskin, Atlanta, Ga. (Court appointed), for Martin.

Roman A. DeVille, Atlanta, Ga. (Court appointed), for Haddock.

Bruce L. Whitmer, Atlanta, Ga. (Court appointed), for Chapman.

John W. Stokes, U. S. Atty., Stanley M. Baum, J. Robert Cooper, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

---

Before BROWN, Chief Judge, GOD-BOLD and CLARK, Circuit Judges.

PER CURIAM:

The Supreme Court has remanded this criminal appeal with directions to reconsider our affirmances of the convictions of defendants Breaux and Harp for the crime of escape in light of the Court's intervening decision in *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).[1] Notwithstanding what portent *Hale* may have held, the recent decision in *Doyle v. Ohio*, —— U.S. ——, 96 S.Ct. 2240, 49 L.Ed.2d 1, 44 U.S.L.W. 4902 (1976), mandates that we find that the prosecutor's comments on the post-arrest silence of Breaux and Harp constitute reversible error and we remand for a new trial.

The facts of this bizarre case are detailed in our prior opinion. 513 F.2d 786 (5th Cir. 1975). In brief, appellants are inmates at a federal penitentiary who, along with eight others, were discovered in an obvious escape attempt. A sharp-eyed prison official stopped a railroad car ostensibly loaded with mattresses as it was in the process of exiting the sally port in the prison wall. When he noted unusual scratches and markings on the bottom of the car, he ordered it back inside the wall and discovered the men concealed in an igloo-type hiding place within the railroad car's cargo of mattresses. In addition to the ten prisoners, a subsequent search of the boxcar turned up various tools, clothing, a flashlight and two authentic looking handguns made of wood.

After the officials had obtained a name and number from each man, the suspected escapees were searched and placed in segregation. They were later advised of their *Miranda* rights and each man declined to make a statement on the matter.

At the consolidated trial for attempted escape (18 U.S.C. § 751(a)), two of those accused took the stand and presented a transparently frivolous duress defense, claiming that only their co-defendant Chapman had intended to escape. Their story was that although the escape cavern had been built big enough for ten men, Chapman constructed it alone and his plan had been unexpectedly interrupted when he came upon the others secretly drinking illegally brewed beer under the boxcar in the loading dock pit. Rather than jeopardize his scheme, Chapman kidnapped the other nine and forced his "victims" into the hideaway by threatening them with fake guns. Chapman also took the stand and corroborated the kidnapping explanation; this defense was that he was insane at the time. Neither Breaux nor Harp elected to testify; instead, their counsels in summation adopted their co-defendants' story as their defense.

To rebut this collective defense, the prosecutor highlighted in closing argument the fact that from the moment of their "deliverance" to the time of trial, no defendant had ever told prison officials or investigating officers that he was a "victim" rather than a perpetrator of the offense.[2] No objection to these remarks was registered by any of the defendants. However, under a plain error review these comments necessitate reversal.

> Now doesn't it make sense that if the facts had been like the defendants said they had been, that they would have told somebody?
> "Warden Henderson, I had no part in this. I was forced and compelled in a boxcar by Mr. Chapman," and don't you know right down the list that they would have gotten together and said, "Warden, we didn't have anything to do with that; Mr. Henry, FBI man, I had nothing to do with it. Don't prosecute me for this. I was frightened slap to death by this man Chapman."

---

1. Of the six defendants involved in our prior disposition, only three (Breaux, Chapman and Harp) petitioned the Supreme Court to issue writs of certiorari. The Court granted certiorari and remanded as to Breaux and Harp. Chapman's petition was denied.

2. Shortly after saying that if the jury believed the duress defense then its "feeling about Santa Clause and Easter Bunny and the Good Fairy and all of that . . . [would be] equally acceptable," the prosecutor stated:

■ The Court's position on the use of post-arrest silence has been made clear by its most recent pronouncement in *Doyle v. Ohio*, —— U.S. ——, 96 S.Ct. 2240, 49 L.Ed.2d 1, 44 U.S.L.W. 4904 (1976). Essentially adopting Justice White's concurring opinion in *Hale,* the *Doyle* Court held that it is fundamentally unfair to allow an arrested person's silence following *Miranda* warnings to be used to impeach an explanation subsequently offered at trial. Departing from its more flexible approach in *Hale,* the Court now reasons that "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." —— U.S. at ——, 96 S.Ct. at 2244, 44 U.S.L.W. at 4904.

Thus *Doyle* clearly forecloses the use of a balancing approach in this case. Were it not for *Doyle's* emphasis on the effect of *Miranda* warnings, we might have no trouble deciding that appellants' failure to promptly advise officials upon arrest of their duress is highly probative evidence that their trial explanation was likely a recent fabrication. Nevertheless, since appellants were advised of their right to remain silent, *Doyle* mandates that we characterize as unconstitutionally unfair the prosecution's use of such silence to defeat their kidnapping defense. Because the prosecutor's comments struck at the jugular of their story, those remarks cannot be classified as harmless.

The present convictions of appellants Harp and Breaux are required to be reversed so that they may be retried without reference to their silence.

REVERSED and REMANDED.

Did that happen? No, that didn't happen. Don't you know that anywhere along the line, these people could have gotten somebody at the prison and said, "Look, don't prosecute me for this, I was forced up on the boxcar."

Did that happen? No, it didn't happen. When was the first time that any of that was talked about? Right in this courtroom is when that was first talked about.