**Francis BOOTON, Petitioner-Appellant,**

**v.**

**Dorothy W. HANAUER, etc., et al.,**
**Defendants-Appellees.**

**No. 76–1076.**

United States Court of Appeals,
First Circuit.

Argued May 5, 1976.

Decided Sept. 2, 1976.

Michael A. Paris, Boston, Mass., with whom Leppo & Paris, Boston, Mass., was on brief, for appellant.

Peter W. Heed, Concord, N. H., Atty., with whom David H. Souter, Atty. Gen., Concord, N. H., was on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Petitioner-appellant was indicted in New Hampshire for the second degree murder of her husband; a jury convicted her of first

degree manslaughter. Her unsuccessful appeal to the New Hampshire Supreme Court included the two constitutional issues upon which her instant habeas corpus petition is based. *State v. Booton*, 114 N.H. 750, 329 A.2d 376 (1974), *cert. denied*, 421 U.S. 919, 95 S.Ct. 1584, 43 L.Ed.2d 787 (1975). The petition was denied in a thorough opinion by the district court which granted a certificate of probable cause.

Petitioner charges first that two newspaper articles published during her trial deprived her of a fair trial.

■ The first article reported that the trial judge had denied defense motions for directed verdicts based upon the prosecutor's opening statement. This was incomplete, for the judge had also reserved the right to change his ruling during the course of the trial. Defense counsel argued prejudice from the inaccuracy and, because the ruling had occurred outside the jury's presence, he sought a voir dire. The trial court felt that the article was not prejudicial, and that a voir dire would be counterproductive to a fair trial. The judge noted that the jurors had been warned against reading newspaper coverage.

The other article reported a deputy sheriff's questioning of defendant at her home after she called the police to the scene. The witness actually testified:

"And after I asked her who was holding the gun when it was fired, she became upset. She kept saying, 'We were only fooling around with the gun. We were only fooling around with the gun.' She said, 'I must have been holding the gun.'"

The article condensed this testimony as follows (with a correction for a transposed line): "Rockingham County Sheriff's Deputy Robert Farrar testified Monday that when he interrogated Mrs. Booton, she told him, 'I must have had (the gun) when the shots were fired.'" This was inaccurate, but it was not substantially misleading. Again, the trial judge ruled that the article did not contain the capacity to prejudice the trial; and he noted that on the evening prior to publication of this article the court had specifically warned the jurors against reading the paper. And in his charge, he carefully warned the jury to consider only evidence admitted before it in court.

■ The ruling on prejudice is within the trial judge's discretion. *Holt v. United States*, 218 U.S. 245, 251, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). We cannot say that the reports contained enough capacity for prejudice to create the danger of a denial of a fair trial or of due process. *Cf. United States v. Concepcion Cueto*, 515 F.2d 160, 163 (1st Cir. 1975). And when inaccuracies in reports of proceedings occurring out of the presence of the jury are harmless, a voir dire will only call undue attention to them and waste time. *See* A.B.A. Standards relating to Free Press and Fair Trial, § 3.5(f) (approved draft, 1968) (calling for voir dire during trial only if "serious questions of possible prejudice" are raised).

Appellant also claims constitutional error arising from testimony by the deputy sheriff that, in further questioning the defendant, "I asked her other questions about the clip, and who put the clip in, and so forth. And she refused to answer any more questions." This testimony provoked a motion for a mistrial, which was denied.

■ There can be no doubt that the prosecutor may not at trial use as evidence of substantive guilt the fact of defendant's silence in the face of accusations. *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Nor may the state constitutionally impeach a defendant's trial testimony with proof of post-arrest silence. *Doyle v. Ohio*, —— U.S. ——, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Evidence of refusal to answer specific questions in the course of an interview has been held inadmissible. *United States v. Ghiz*, 491 F.2d 599 (4th Cir. 1974).

■ We think it was constitutional error to introduce the instant petitioner's eventual refusal to answer further ques-

tions.* A rule of inadmissibility is appropriate because the very introduction of such a refusal can give rise to an impermissible inference of guilt that constitutes a penalty upon the exercise of constitutionally-based rights. *But see Jackson v. State*, 19 Cr.L. Rep. 2109 (Tennessee S.Ct. Mar. 22, 1976). This is not to say, however, that the error may not, in particular cases, be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. King*, 485 F.2d 353, 360 (10th Cir. 1973).

■ We first note the absence of any kind of aggravating circumstances which have led to reversals of convictions in other cases. Here, the introduction of petitioner's refusal to continue answering questions was neither a dramatic nor a telling event. Mrs. Booton herself had called the police, reporting an "accidental shooting". She was willingly interviewed. Her answers to questions surrounding the actual shooting, however, were mostly general and unresponsive, including her oft-repeated statement: "We were only fooling around with the gun." (The one exception to this was her admission that she must have been holding the gun.) She was clearly distraught, apparently confused. The posture of the questioning was not accusatory as in, *e. g., Cockrell v. Oberhauser*, 413 F.2d 256 (9th Cir. 1969), but was directed instead at keeping her calm while also eliciting information. In contrast to *Ghiz, supra*, the query at which she cut off questioning was not a particularly important one. Moreover, the testimony was not calculated to damage a point upon which a defense was being constructed, *see United States v. Impson*, 531 F.2d 274 (5th Cir. 1976); nor do we believe it constricted her decision whether to take the stand. Her statements had placed her alone with her husband fooling around with the gun, and holding the gun when it was fired. Unless she were to deny on the stand that scenario, her eventual silence at the scene would not, under the circumstances of her emotional distress (which was perfectly consistent with lack of culpability), have tended to impeach any more detailed or specific story to which she might have testified. Finally, there was no comment (direct or indirect) on this point by the prosecutor; and indeed the court strongly charged the jury that: "She had the right to terminate the questioning at any time, and you have no right to infer anything from that because we don't penalize people for invoking legal rights."

In the present case we are convinced that any such inference as might have been drawn by the jury from the inadmissible evidence was inconsequential, in the light of the overwhelming, identical inference drawn from admissible evidence, namely, petitioner's earlier answers. Petitioner's answers at the scene in themselves constituted a repeated failure to tell a complete story. The jury could have attributed this to emotional distress and shock from the death of her husband, no matter what the cause; to confusion about her role in the incident; to an inability to deal with the reality of the shooting; to a suspicion, or knowledge, of her own culpability; or to a combination of such factors. But we are convinced beyond a reasonable doubt that whatever inference the jury might have impermissibly drawn from her eventual refusal to testify would have been cumulative and harmless. The inference (adverse or not) already drawn from her non-specific answers could not have been changed as between a choice of (a) the jury getting no more information about the interview or (b) the jury learning that she stopped the interview.

---

* We do not agree with the New Hampshire Supreme Court that the testimony was, in context, unresponsive. While the prosecutor asked only what *question* the deputy had next propounded, the whole line of questioning up to that point had followed a pattern of similar prosecutor's questions followed by the witness' narration of both the question he asked and the answer given in response. We do not believe the introduction of this testimony may be classed as inadvertent. We do not decide if inadvertence would affect the analysis.

We therefore rule that the error in admitting proof of post-arrest silence was harmless.

*The denial of the writ of habeas corpus is affirmed.*