**UNITED STATES of America**

v.

**Everett A. WILLIAMS, Appellant (two cases).**

**Nos. 76–1100, 76–1337.**

United States Court of Appeals, District of Columbia Circuit.

April 28, 1977.

Certiorari Denied June 13, 1977. See 97 S.Ct. 2936.

Edward L. Schwartz, Boston, Mass., with whom Lewis A. Sassoon, Boston, Mass., was on brief, for United States of America for the Use and Benefit of Capitol Elec. Supply Co., Inc.

Joseph H. Killion, Boston, Mass., with whom MacPhee, Downey & Killion, Boston, Mass., was on brief, for C. J. Electrical Contractors, Inc., et al.

Jack R. Pirozzolo, Boston, Mass., with whom Willcox, Pirozzolo & McCarthy, Boston, Mass., was on brief, for Usen Associates, Inc. and Keene Corp., Inc.

John M. Reed, Boston, Mass., with whom Philip M. Cronin, Robert P. Baker, and Withington, Cross, Park & Groden, Boston, Mass., were on brief, for Travelers Indem. Co.

Before TAMM and LEVENTHAL, Circuit Judges, and FRANK A. KAUFMAN,* United States District Judge for the District of Maryland.

## ORDER

PER CURIAM.

On consideration of appellant's petition for rehearing, it is

ORDERED by the Court that appellant's aforesaid petition is denied.

Dissenting opinion by FRANK A. KAUFMAN, District Judge.

## DENIAL OF PETITION FOR REHEARING

PER CURIAM:

In this case the main issue is presented by the evidence of defendant's statement at the police station. The defendant testified that he did not know a bank robbery had occurred and that he tried to evade the plainclothesmen in the subsequent car chase not knowing they were policemen. In rebuttal, a detective testified that at the stationhouse defendant had put the situation quite differently, in an attempt to exculpate himself. Then, defendant had said that he had not tried to outrun the police and that no one had chased him anywhere.

On appeal the defense argues that his constitutional rights were impaired because the detective, after relating this impeaching testimony, volunteered: "He then stated that he wanted to talk to a lawyer before he answered any more questions, at which time I concluded my interview with him." (Tr. 165).

■ Counsel for appellant argues denial of constitutional rights under the doctrine of *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which precludes comment on the failure of a defendant to testify or give a statement at the stationhouse. It is also clear that the fifth amendment precludes a prosecutor from eliciting the defendant's action in hiring an attorney, in view of the tendency of such testimony to serve as the base for an inference of guilt based on such an act. *United States v. Liddy,* 166 U.S.App.D.C. 95, 110–12, 509 F.2d 428, 443–5 (en banc, 1974).

In this case the testimony as to defendant's silence and desire of counsel was not elicited by the prosecutor. It was not pointed up in summation. It was blurted out by the witness. After a bench conference the judge instructed the jury to "disregard that statement by the detective to the effect that the defendant asked for a lawyer." (Tr. 167). Defense counsel sought no further instruction. His position was that he was entitled to a mistrial.

Our review leads us to the clear conclusion that the testimony that led to the conviction of this defendant, following the hung jury at the first trial, was the impeachment testimony at the second trial that solidly cut across his alibi. What was damaging was not any testimony of defendant's silence, but the testimony of what defendant said before he decided to say no more.

* Sitting by designation pursuant to Title 28 U.S. Code Section 292(d).

■ A prosecutor has no right to introduce evidence that defendant was silent. *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Wycoff,* 545 F.2d 679 (9th Cir. 1977). If the defendant makes an admissible statement, the recounting witness may conclude the account in a natural fashion by indicating that there is nothing more to say, because the defendant chose to stop. Otherwise, the jury, may erroneously infer that it was the police who cut the interview short, before the defendant had full opportunity to give his account. Of course, the prosecution may not draw attention to the exercise of the right to become silent after speaking some.

■ Testimony about the desire or request for a lawyer is impermissible. Such statements can be excised without making the narrative stilted, with the effect of avoiding prejudice to or unfair inference against either party. In this case the testimony about wanting to talk to a lawyer was blurted out without any elicitation by the prosecutor. While the prosecutor might be faulted for not anticipating this information and alerting the witness to the bar on its use, we do not find the exposure of the jury to that information to require reversal of the conviction. The dominant feature of the detective's rebuttal testimony, and its overriding impact, was its contradiction of defendant's alibi. These considerations, together with the strong evidence of guilt, the judge's cautionary instruction and the absence of prosecution emphasis on the exercise of constitutional rights, lead us to conclude that the error in the testimony as given, did not play a significant role in producing the verdict. The law must take account of improbabilities as well as probabilities, and the conviction can stand by reference to the doctrine of harmless error. The petition for rehearing is denied.

*So ordered.*

FRANK A. KAUFMAN, District Judge, dissenting:

After briefs in this appeal had been filed and oral arguments had been heard, an Order of this Court affirming the Judgment of the District Court was entered by the unanimous determination of this Court. Thereafter, a Petition for Rehearing with a Suggestion for Rehearing *En Banc* was filed by defendant. Originally, I concluded that that petition should be denied. Further consideration, however, convinces me that the petition for rehearing should be granted. As a Judge assigned specially to sit in this Court for a limited period of time, I of course express no view as to whether the rehearing should be *en banc.*

The defendant in this case was convicted under the federal bank robbery statute in a second jury trial after the jury in his first trial before a different District Judge was unable to agree upon a verdict and was discharged. The defendant was the driver of the car which transported three other men to and from the bank. While the three men were engaged in entering and holding up the bank, they were observed by plainclothes officers who happened to be in the area for reasons unconnected with this case. Those plainclothesmen radioed for assistance and, together with others who arrived on the scene, chased the three men and the driver of the get-away car through the streets of Washington, D. C. The defendant, during both trials, took the witness stand in his own defense and testified that he did not know that a robbery was planned or engaged in, and that while he knew the car he was driving was being pursued after he drove away from the bank, he did not know the men in the pursuing car were police officers because they were in plain clothes. In that connection, the defendant stressed that one of the men in the pursuing car was pointing a weapon at the car that the defendant was driving and that the defendant tried to drive away from the pursuing car because he was afraid that someone was out to harm him and the other occupants of his car. The defendant further insisted that, along with the three bank robbers, he ran from the car he was driving, after he was finally forced to stop and to abandon it, because of his fear of his

pursuers. The defendant was caught within twenty-five or thirty yards of the car, placed under arrest, and taken to a police station. While the District Judge, during the first trial, expressed to counsel out of the jury's hearing his opinion that the case was almost an open-and-shut one (Tr. at 97–101), the first jury hung.

During the second trial, but not during the first trial, a police officer who had not witnessed the robbery and who had not engaged in the pursuit, but who did talk with the defendant after he was arrested at police headquarters following his apprehension, took the witness stand in rebuttal. (Apparently, the prosecutor did not learn of the police officer's conversation with the defendant at the police station until after the first trial (Tr. of second trial at 166–68).) [1] That officer testified (Tr. of second trial at 164) that before he began speaking to the defendant, "I verbally advised the defendant of his rights to remain silent, that anything he said could and would be used against him in a court of law, and I advised him that he did have a right to a lawyer and if he could not afford a lawyer, one would be appointed for him."

At no time did that officer testify that he informed the defendant that he had a right to stop speaking at any time. That last-quoted language appears in the attached xerox of the card which FBI agents carry with them and use. The language of the card is also very similar to that used by other federal law enforcement agencies. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not itself specifically require that advice concerning the right to stop talking along with the other rights advice be given. However, Miranda does hold that such a right exists. 384 U.S. supra at 473–74, 86 S.Ct. 1602. It is to be noted, however, that in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), Mr. Justice Powell, 426 U.S. at 617, 96 S.Ct. at 2242, 49 L.Ed.2d at 97, and, in his dissent therein, Mr. Justice Stevens, 426 U.S. at 621 n.2, 96 S.Ct. at 2246, 49

L.Ed.2d at 99, in the course of reciting the required Miranda rights advice, refer only to what the police officer in the within case did state and do not advert to any additional advice about being able to stop talking at any time, etc. However, even if the rights advice given by the police officer to the defendant was defective, under Miranda the defendant's statement was admissible for impeachment purposes. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In Harris, supra at 223, 91 S.Ct. at 644, Mr. Chief Justice Burger noted: "The trial judge instructed the jury that the statements attributed to petitioner by the prosecution could be considered only in passing on petitioner's credibility and not as evidence of guilt. In closing summations both counsel argued the substance of the impeaching statements." In this case neither the closing arguments of counsel nor the trial Judge's instructions to the jury in the second trial contained any such limiting reference. That, however, is of no consequence since the police officer's testimony was aimed at impeaching the defendant's testimony.

The police officer's testimony as a rebuttal witness was received over objection by counsel for the defendant. The officer stated (Tr. at 164–65) that the defendant, after being advised of his rights as set forth supra, had asserted that he was not involved in the bank robbery and, when asked why he had tried to outrun the police, had stated that he did not try to outrun the police. The officer testified that he then informed the defendant that the police had chased the defendant half way around town (Tr. at 165) and that at that point the defendant stated that "nobody chased him anywhere". The police officer additionally volunteered the following remark: "He then stated that he wanted to talk to a lawyer before he answered any more questions, at which time I concluded my interview with him" (Tr. at 165). The record discloses that that last statement was in no way elicited by government counsel. Fur-

---

1. At the second trial, the prosecutor stated during a bench conference that the officer had not made any written notes of that police station interview (Tr. of second trial at 166).

ther, there is, in this case, every reason to believe that government counsel was as surprised as were the trial Judge and defense counsel when that remark was blurted out by the witness. Nor does it appear that the police officer, as a witness, did anything but tell his story naturally.

The defendant, through his counsel, both during the second trial and on appeal in this court, has contended that the defendant's statement to the police officer was not an admission and was not admissible under Federal Rule of Evidence § 613(b). That contention is not meritorious. However, the question remains as to whether the volunteered remark by the police officer was error and if so whether it was harmless error. Following that remark and the bench conference during which the trial Judge denied defendant's motion for a mistrial, the Judge instructed the jury to "disregard that statement by the detective to the effect that the defendant asked for a lawyer" (Tr. at 167). No further jury instruction was requested or given at any time with regard to the matter.[2] Nor was any mention of the officer's volunteered remark made thereafter by Court or counsel.

The defendant had the right to have his interrogation at the police station cease when he stated he wanted to consult an attorney before he answered any more questions. *Miranda* mandates:

Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. * * * [384 U.S. *supra* at 473–74, 86 S.Ct. at 1627 *(footnote omitted).*][3]

In *Doyle v. Ohio, supra,* the two defendants had been arrested together for selling marihuana to an informant. They were convicted in separate trials, in both of which the evidence was substantially the same. Each of the defendants took the witness stand in his own trial and gave exculpatory testimony which had not before the first trial been stated by either of them to the police or to the prosecutor. Over their respective counsel's objections, each of them was cross-examined as to why he had not given those explanations to the police officer who interrogated him after his arrest. Mr. Justice Powell, speaking for the majority, reversed the two convictions, holding (426 U.S. at 619, 96 S.Ct. at 2245, 49 L.Ed.2d at 98–99) "that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." [Footnote omitted.] He also stated (426 U.S. at 617–18, 96 S.Ct. at 2244, 49 L.Ed.2d at 97–98):

Silence in the wake of these [*Miranda*] warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is

---

2. The defendant's counsel did ask for a "theory of the defense" instruction which the trial Judge gave in the first trial but which was not given in the second trial. While the "theory of the defense" instruction given in the first trial does set forth the defendant's position in terms of the facts of the case to a greater extent than the instruction utilized by the second trial Judge and while from the point of view of hindsight it might have been better for the defense's instruction to have been given again in the second trial, the instruction given was adequate.

3. *And see* the dissenting opinions of Mr. Justice Clark (at 500, 86 S.Ct. 1602) and of Mr. Justice Harlan (at 504–05, 86 S.Ct. 1602) recognizing that the majority opinion of Mr. Chief Justice Warren provides for the right of a person in custody to request the end of interrogation, once commenced without an attorney present. As to the right to have interrogation cease when an attorney is present, *see* the majority opinion in *Miranda* at 474 n. 44, 86 S.Ct. 1602.

insolubly ambiguous because of what the State is required to advise the person arrested. * * * Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. * * * [Footnotes omitted.]

In this case, the police officer's comment upon the defendant's exercise of his constitutional rights is as "fundamentally unfair", and just as much "a deprivation of due process", as it was in *Doyle*. It is true that this is not a case in which the defendant made no statement, exercised his right to remain silent, and then had his trial testimony impeached by that silence, as occurred in *Doyle*. Rather, this is a case in which the defendant, even though he was apparently not explicitly advised of his rights to stop answering his interrogator and to obtain counsel, in fact exercised those rights. It can be argued that it is misleading for a jury not to be told why a law enforcement officer has not pursued his interrogation, and that the jury will be puzzled by such a failure. But the same is quite often true when there is no interrogation, *i. e.,* the situation which pertained in *Doyle*. There is a strong inference bred by either total silence by a defendant at the time of or shortly after arrest, or by the subsequent exercise of the right by a defendant to stop his interrogation, which renders suspect that defendant's exculpatory explanation given for the first time at trial. The existence of that type of inference, which was held not to justify the use for impeachment purposes of the defendant's silence in *Doyle,* should not be held herein to justify the comment of the police officer upon the defendant's silence—a remark, it is true, which was both unsolicited by the prosecution and natural for the police officer as a witness to make. Herein, further, that comment not only informed the jury that the defendant wanted his interrogation to cease, but that he wanted it to cease until he could talk to a lawyer. The trial Judge did instruct the jury to "disregard that statement by the detective to the effect that the defendant asked for a lawyer" (Tr. at 167). Even assuming that the jurors followed that instruction to the best of their ability, one must question how able the jurors were so to do. But if they were so able, they still had before them the detective's testimony as to the silence of the defendant. In my opinion, the comment by the witness as to the defendant's exercise of his right to stop talking, a right guaranteed by *Miranda* just as much as the right to remain silent in the first place, brings into play by strong analogy the doctrine espoused by *Doyle*.

Finally, in this case, it is not possible to know, despite the very strong evidence of guilt of the defendant, whether the second jury would have convicted the defendant if the police officer had not blurted out his remark. The first jury hung. Its members seemingly did not unanimously disbelieve the defendant's testimony. There is no way of knowing whether the second jury would have believed the defendant or disbelieved him if the officer had not volunteered his comment and had simply given the remainder of his testimony, impeaching the defendant's testimony. It may well be that what caused the second jury to convict, after the first jury hung, was the police officer's testimony as to what the defendant said at the police station, and that the officer's offending remark had little if any, or at least no controlling, impact upon the minds of the jurors. But in this case the key is whether the jury believed the defendant or the officer. Thus, the issue is purely one of credibility. In that context it seems to me that there is no blinking the possibility that the officer's comment about the defendant desiring to "talk to a lawyer before he answered any more questions" may have caused the jury to disbelieve the defendant and to believe the officer. Thus, that comment should *not,* in my opinion, be held to constitute harmless error. *See, e.*

*g., United States ex rel. Macon v. Yeager,* 476 F.2d 613 (3d Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973), and *United States v. Liddy,* 166 U.S.App.D.C. 95, 509 F.2d 428, 444–45 (1974), distinguishing *Yeager.* Because I believe that a non-harmless error has been committed, I conclude that the defendant's motion for rehearing should be granted. Accordingly, I dissent from the denial of the same.