**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sixto MIRELES, Defendant-Appellant.**

**No. 77–5243.**

United States Court of Appeals,
Fifth Circuit.

April 7, 1978.

Daniel V. Alfaro, Albert Huerta, Corpus Christi, Tex., for defendant-appellant.

James R. Gough, Jr., U.S. Atty., Anna E. Stool, George A. Kelt, Robert A. Berg, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

AINSWORTH, Circuit Judge:

Defendant Sixto Mireles appeals from a conviction of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He contends that the district court erred in denying his motion to suppress the evidence obtained as a result of an allegedly unlawful search conducted at the Falfurrias checkpoint. The second ground of error asserted is that the prosecutor's questions and argument impermissibly commented on the exercise of defendant's constitutional right to remain silent after arrest. Finally, defendant claims that there was insufficient evidence that defendant knowingly transported the marijuana. We affirm.

Defendant was driving a two-ton truck when he was stopped at a Border Patrol checkpoint 7 miles south of Falfurrias, Texas. The Border Patrol Agent, Officer Edwards, questioned Mireles about his citizenship. After determining that defendant was a citizen of the United States, Edwards asked Mireles if there was anyone in the box part of the truck. The Agent testified that Mireles became "physically nervous" when the rear of the truck was mentioned, and that defendant's response to his question was that there was "no one back there, just my personal furniture". Mireles was then asked to drive to the secondary inspection area and to open the back of the truck. Defendant complied, and when the rear of the van was opened by Mireles, the Agent discovered that the van was partially loaded with furniture, and that there were mothballs scattered on the floor. In addition, Officer Edwards identified some marijuana seeds and pieces of leaves in the cracks and on the floor of the van. Despite the mothballs, Edwards detected the odor of marijuana. After examining the interior of the van, and comparing it with the exterior dimensions, Agent Edwards suspected that there was a concealed compartment in the front of the van. He then removed the plywood panel and discovered 1805 pounds of contraband. At that time defendant was advised of his *Miranda* rights, and placed under arrest. After defendant acknowledged that he fully understood his rights, Edwards asked him if the marijuana in the secret compartment was his. According to Officer Edwards, Mireles stated that the marijuana was not his, that he had not known of its presence, and that defendant had borrowed the truck from his uncle to move defendant's furniture to his new residence.

After discovering the contraband and arresting Mireles, Edwards notified Agent Havens to take defendant and the contraband into custody. Havens testified that the furniture in the van consisted of an apparently inoperative small refrigerator, a clothes washer and dryer, part of a bedstead, and some miscellaneous pieces. Agent Havens stated that after he had returned to the Corpus Christi District Office, he asked defendant if the furniture belonged to him, and Mireles responded that it did not.

Defendant Mireles testified at trial. His defense was based on his purported lack of knowledge that nearly a ton of marijuana was concealed in the rear of the truck. According to defendant, a man named Guadalupe Rivas paid him $150 to move Rivas' furniture from San Juan to Port Lavaca. Defendant stated that he helped load the furniture into the truck, but that he was not aware of the marijuana in the concealed compartment. Mireles testified that he first met Guadalupe Rivas, also known as Tío Rivas, at a garage owned by defendant's godfather. Defendant admitted that he had not talked with Rivas for nearly a year prior to the request to deliver the furniture. Mireles' version of the encounter at the Falfurrias checkpoint contradicted Agent Edwards' testimony that defendant stated that the furniture in the rear of the truck belonged to him. Defendant conceded that after the contraband was discov-

ered he might have mentioned something about an uncle, but that the mention of an uncle as intended to be a reference to Tío Rivas, as "Tío" means "uncle" in Spanish.

*Motion to Suppress*

 Defendant's counsel made a motion to suppress evidence of statements made by defendant and physical items obtained or discovered as a result of the search of the truck Mireles was driving. In the motion it was contended that the absence of probable cause or a warrant for the arrest of defendant or the search of the truck invalidated both the stop and the search of the vehicle. Before the jury was seated and any evidence had been taken, defendant's counsel asked the district judge whether the motion to suppress would be carried with the trial of the case. The judge responded that it would be, and inquired whether it was a checkpoint case. The prosecutor informed the court that it was a checkpoint case, and the trial judge stated that he would take judicial notice of the physical characteristics of the checkpoint and would sign an order to that effect, as was his practice in such cases. Defendant's counsel stated he had no objection, and an order was filed the same day.

The order included a description of a checkpoint located 16 miles south of Falfurrias, entered in a previous criminal action also presided over by District Judge Cox, as well as Supplemental Findings of Fact and Conclusions of Law in that case, which noted that the permanent checkpoint 16 miles from Falfurrias was the functional equivalent of the border.[1] The checkpoint involved in this case is 7 miles from Falfurrias.

In his opening statement defendant's counsel agreed with the prosecutor that "the only question here before us today is that of knowledge". At trial, defendant testified that he was unaware of the marijuana contained in the concealed compartment. Defendant's attorney stated that he had no objection to the admission of a photograph of the contraband and a stipulation as to its substance and amount, nor did he object to the admission of any of the evidence previously sought to be suppressed. Counsel never requested a ruling on the motion to suppress, or sought a directed verdict of acquittal, and no ruling was ever made. It is therefore clear that defendant effectively abandoned the motion to suppress, and relied instead on his asserted innocence.[2]

1. The previous case was *United States v. Sanchez-Garcia,* S.D., Tex., Cr. No. 73–C–75 (1974). The Order taking judicial notice of the physical aspects and legal status of the checkpoint 16 miles from Falfurrias was filed on July 26, 1974.

2. *See United States v. Elmore,* 4 Cir., 423 F.2d 775, *cert. denied* 400 U.S. 825, 91 S.Ct. 49, 27 L.Ed.2d 54 (1970), where the defendant made a motion to suppress a notebook. The district judge "indicated that he would 'probably' admit the evidence if and when it was offered, but he apparently made no formal ruling on the matter at that time. When the government subsequently offered the notebook at trial, however, defense counsel stated that he had no objection to its admission." *Id.* at 777. The Fourth Circuit concluded that the affirmative statement of no objection constituted a relinquishment of the right to have the evidence suppressed. The court went on to find that the motion should have been denied.

The situation in *Elmore* was quite similar to that in the present case. The district judge's indication that he would probably admit the evidence corresponds to the routine judicial notice of the characteristics of the Falfurrias

checkpoint. In both cases counsel affirmatively stated that the defendant had no objection to the admission of the evidence.

The *Elmore* court relied on *Lawn v. United States,* 355 U.S. 339, 353–55, 78 S.Ct. 311, 319–20, 2 L.Ed.2d 321 (1958). In *Lawn,* an experienced defense counsel stated that he had no objection to the admission of certain evidence that had earlier been the object of an unsuccessful motion to dismiss. The Supreme Court noted that generally the overruling of a pretrial motion to suppress makes it unnecessary to object when the evidence is offered at trial. However, in *Lawn* defendant's counsel employed the evidence sought to be suppressed in attempting to demonstrate the innocent character of defendant's actions. The Court found that defendant had consciously and intentionally waived all objections to admission of the evidence.

*Cf. United States v. Adams,* 10 Cir., 1970, 422 F.2d 515, 518 (where the court found a waiver of a motion to suppress in an affirmative statement that the defendant had no objection to the admission of the evidence).

The appropriate inquiry at this juncture is whether admission of the fruits of the stop[3] and the search was nevertheless plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Brown*, 5 Cir., 1977, 555 F.2d 407, 420, *cert. denied* 46 U.S.L.W. 3541 (Feb. 27, 1978). We conclude that no plain error was committed. Defendant, a part-time student at Texas A & I, never objected to Agent Edwards' request to open the rear of the truck. Officer Edwards testified that Mireles was courteous at all times, and Agent Havens stated that defendant was cooperative. As the contraband was hidden in a concealed compartment at the front of the van, and the van was loaded with furniture as he had told the officers, it was entirely possible that a cursory inspection would not be incriminating. *Cf. United States v. Hall*, 5 Cir., 1978, 565 F.2d 917, 920–21 (where the court found consent to a search of an automobile trunk that uncovered a sawed-off shotgun sheathed in a billiard cue case). However, the marijuana debris recognized by the experienced officer, the presence of mothballs[4] and the recognizable odor of marijuana alerted him to the possible presence of a larger amount of contraband in the truck, and provided the agent with probable cause to search. *See United States v. Marez*, 5 Cir., 1978, 569 F.2d 275;

*United States v. Faulkner*, 5 Cir., 1977, 547 F.2d 870 (where the discovery of marijuana debris furnished probable cause to search the vehicle). Under the circumstances of this case we find consent to the opening of the rear of the truck,[5] and no plain error in the admission of the evidence.[6]

*Prosecutor's Questions and Argument*

Defendant argues that certain of the prosecutor's questions and part of his closing argument impermissibly commented on his right to refuse to speak after he had been taken into custody and been read the *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 467–73, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966). Reliance for this position is placed principally on *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and two recent Fifth Circuit decisions implementing *Doyle*: *United States v. Luna*, 5 Cir., 1976, 539 F.2d 417; and *United States v. Harp*, 5 Cir., 1976, 536 F.2d 601. A comparison of the circumstances of the present case with those in *Doyle* decisively shows that defendant's reliance is misplaced, and that there was no impropriety in the prosecutor's questions and argument.

In *Doyle* the defendants were silent after the *Miranda* warnings were given.[7] At tri-

---

**3.** As this checkpoint is permanent, *see United States v. Woody*, 5 Cir., 1978, 567 F.2d 1353, n.3, the agents can stop and inquire into citizenship. Thus, the original stop, including the subsequent direction to the secondary inspection area, was valid. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *United States v. Faulkner*, 5 Cir., 1977, 547 F.2d 870.

**4.** Agent Edwards testified that mothballs are often used to disguise the odor of marijuana.

**5.** *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Villarreal*, 5 Cir., 1978, 565 F.2d 932, 937 (where the court noted that the defendant made no objection to opening the trunk and there was no evidence of coercion); *United States v. Almand*, 5 Cir., 1978, 565 F.2d 927, 930; *United States v. Hall*, 5 Cir., 1978, 565 F.2d 917, 920–21.

**6.** As we have decided this case on the basis of consent and the lack of plain error, we need not reach the question of whether the Falfurrias checkpoint is the functional equivalent of the border. *See United States v. Torres*, 5 Cir.,

1976, 537 F.2d 1299, 1300, nn.1–2. For a discussion and application of the characteristics of a functional equivalent of the border, *see United States v. Alvarez-Gonzalez*, 5 Cir., 1976, 542 F.2d 226 (remanding for factual findings), 5 Cir., 1977, 561 F.2d 620 (*aff'g* a finding of functional equivalency). The three major considerations are the relative permanence of the checkpoint, the relative degree of interference with domestic traffic, and the ability of the checkpoint to monitor otherwise uncontrollable international traffic. The district court in the present case did not make any findings regarding the second consideration, the ratio of domestic to international traffic. The case from which the description of the checkpoint was taken was considered in 1974, well before articulation of the proper standards in *Alvarez-Gonzalez*.

**7.** Justice Stevens' dissenting opinion in *Doyle* notes that one of the defendants, Doyle, did not in fact remain silent after arrest. 426 U.S. 610, 622, n.4, 627–28, 96 S.Ct. 2240, 2247, n.4, 2249, 49 L.Ed.2d 91. Doyle asked what he was being arrested for, and when learning that it was for the sale of marijuana, queried "[w]hat's this all

al they offered an exculpatory version of the marijuana transaction that was the subject of the prosecution. The government sought to undercut the defendants' version by asking each defendant why he had not told the police the exculpatory explanation after arrest. The Supreme Court held that this impeachment by the use of post-arrest silence was fundamentally unfair and a deprivation of due process. According to the majority, "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested," 426 U.S. 610, 617, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91 (1976), and therefore the use of a post-*Miranda* warning silence by cross-examining a defendant regarding

his failure to explain his alleged innocence is impermissible and prejudicial. Both *Luna* and *Harp* were simple applications of *Doyle* to prosecutorial argument that sought to impeach exculpatory explanations offered by defendants by calling attention to the failure of defendants to assert their innocence after arrest and the giving of the *Miranda* warnings.

In the present case the prosecutor asked defendant on cross-examination if he had not told the Agents about Guadalupe Rivas, and arguably called attention to such failure in his closing argument.[8] However, the significance of these questions and statements can only be understood in the proper context. At trial defendant testified that

about?" The majority opinion only addresses post-arrest silence, and does not advert to the problem of post-arrest statements that are inconsistent with later exculpatory explanations.

8. The prosecutor asked defendant:

"Q: And you didn't say anything about Mr. Rivas to Mr. Edwards, did you?

"A: No, sir.

"Q: You didn't say anything about Mr. Rivas to Mr. Havens here, either, did you?

"A: No, sir."

Defendant had already testified regarding his statements to Agents Edwards and Havens after his arrest, and did not include any reference to Guadalupe Rivas. These questions can easily be distinguished from the request for an explanation of silence made by the prosecutor in *Doyle*:

" 'Q: Mr. Wood, if that is all you had to do with this and you are innocent, when Mr. Beamer arrived on the scene why didn't you tell him?' " 426 U.S. 610, 614, 96 S.Ct. 2240, 2243, 49 L.Ed.2d 91.

'Q: [by the prosecutor] . . . You are innocent?

'A: [by Doyle] I am innocent. Yes Sir.

'Q: That's why you told the police department and Kenneth Beamer when they arrived—

'(continuing)—about your innocence?

'A: . . . I didn't tell them about my innocence. No.

'Q: You said nothing at all about how you had been set up?' "

426 U.S. 610, 614–15, 96 S.Ct. 2240, 2243, n.5, 49 L.Ed.2d 91.

During the argument in the present case the prosecutor said: "once he [defendant] took the stand and decided to testify, that's when we get this business about Tío Rivas"; and "[b]ut did the Government ever know anything about Rivas? No, the Government never knew a word about Rivas".

These statements are plainly quite mild. In *Doyle*, the Court implicitly suggested that improper prosecutorial questions could nevertheless be considered harmless. 426 U.S. at 619–20, 96 S.Ct. at 2245. That suggestion was adopted by this court in *United States v. Davis*, 5 Cir., 546 F.2d 583, 594–95, *cert. denied* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). The court in *Davis* reasoned that the *Doyle* rule requires a case-by-case determination of harmlessness. *United States v. Harp*, 5 Cir., 1976, 536 F.2d 601, was interpreted as establishing a requirement for reversal that the prosecutor's comments "struck at the jugular" of defendant's story. 546 F.2d at 594. *Davis* was followed in *Stone v. Estelle*, 5 Cir., 1977, 556 F.2d 1242, 1245. Cf. *Chapman v. United States*, 5 Cir., 547 F.2d 1240, *cert. denied* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977) (finding harmless error where there was only a single reference to defendant's silence in direct examination, the reference was not linked to a frivolous exculpatory story and the evidence of guilt was overwhelming).

In any case, the challenged statements are ambiguous, as the prosecutor could well have been referring to defendant's failure to inform the government about Guadalupe Rivas until defendant took the stand, rather than defendant's silence regarding Rivas immediately after arrest. In *Doyle* the Court noted that comments on silence at times subsequent to the immediate post-arrest period presented "different considerations from those implicated by cross-examining petitioners as defendants as to their silence after receiving *Miranda* warnings at the time of arrest," and therefore did not address the propriety of such practices. 426 U.S. 610, 616, n.6, 96 S.Ct. 2240, 2244, n.6, 49 L.Ed.2d 91.

he was not aware of the marijuana concealed behind the paneling in the front of the van, and that he was merely moving furniture for Guadalupe Rivas, also known as "Tío" Rivas. Defendant testified that after his arrest he might have mentioned something about an uncle, and that this was a reference to "Tío" Rivas. Agent Edwards testified that after defendant was given the *Miranda* warnings, Mireles stated that he had borrowed the truck from his uncle to move Mireles' furniture, and had also denied any knowledge of the contraband.

Thus, a crucial disputed issue in this case was the inconsistency between Mireles' exculpatory story at trial and the Agent's testimony that before the arrest defendant claimed that the furniture was his, and after arrest that he had borrowed the truck from his uncle to move defendant's furniture. Defendant's silence was in no way at issue. Instead, the government was concerned with the inconsistencies as to ownership of the furniture, and whether the truck was borrowed from his uncle or whether it was being driven for pay for Guadalupe Rivas. Defendant's failure to mention Guadalupe Rivas either before or after his arrest bolstered the Agent's testimony that defendant claimed that the furniture was his and that the truck was borrowed from his uncle. Therefore, the prosecutor's questions and argument were not an impeachment by silence, as in *Doyle*, but merely an effort to impeach by prior statements that were inconsistent with defendant's testimony at trial. There is no "insoluble ambiguity" of silence as noted in *Doyle*, since defendant Mireles waived his right to remain silent, and denied knowledge of the presence of the contraband after his arrest. *Doyle's* protection of the right to remain silent does not apply to cross-examination and argument concerning a defendant's exculpatory explanation given after the *Miranda* warnings.

### Sufficiency of Evidence

▆ Finally, defendant contends that the evidence of his knowledge of the presence of the contraband in the truck was insufficient to support his conviction. Defendant's counsel failed to move for a di-

rected verdict, and therefore our review is limited to plain error. *See United States v. Francis*, 5 Cir., 1973, 487 F.2d 968, 972, *cert. denied* 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974). We find no plain error in this case.

The exculpatory story offered by defendant was contradicted by Agent Edwards' testimony regarding Mireles' statements after his arrest. Officer Edwards stated that defendant said that his personal furniture was in the van, and that he had borrowed the truck from his uncle. Agent Havens testified that Mireles later stated that the furniture was not his, and defendant claimed that his mention of an "uncle" was in fact a reference to Tío Rivas. Of course, the evidence must be taken in the light most favorable to the government. *See Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Defendant's explanation of his innocence rested almost entirely on his own testimony, which the jury could reasonably have chosen not to believe. As defendant was the sole occupant and the driver of a truck loaded with nearly a ton of contraband, the jury's verdict of guilty was supported by substantial evidence and was not plain error.

AFFIRMED.

THORNBERRY, Circuit Judge, specially concurring:

Although I join in Judge Ainsworth's able opinion, I write briefly to emphasize the limited nature of the court's holding and the proper application of the harmless error rule in the context of comments on post-arrest silence.

*Miranda* itself makes clear that "the mere fact that [a defendant] may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering further inquiries." *Miranda v. Arizona*, 384 U.S. 436, 445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). *See also Booton v. Hanauer*, 541 F.2d 296 (1 Cir. 1976); *United States v. Williams*, 181 U.S.App.D.C. 188, 556 F.2d 65, *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 57 L.Ed.2d 1070 (1977). Accordingly, the rule

of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), applies when the prosecutor comments on the defendant's failure to provide a post-arrest exculpatory story after offering other information to the arresting officers. *See Booton, supra*. It is equally clear that *Doyle* is inapplicable where the defendant does not remain silent but "attempt[s] to explain at length" his version of the incident. *United States v. Berdick*, 555 F.2d 1329, 1331 (5 Cir. 1977).

The instant case is not one in which a defendant who answered certain post-arrest questions, without offering an exculpatory story, is impeached at trial with his failure to have provided such an explanation after his arrest. Rather, Mireles told the arresting officer that he had borrowed the truck from his uncle to move his own furniture to a new residence. At trial, however, he testified that one Rivas had hired him to move the furniture, and the prosecutor was free to impeach that testimony with Mireles' prior inconsistent explanation.

In footnote 8 of the court's opinion, Judge Ainsworth discusses briefly the harmless error rule in the *Doyle* setting, suggesting that even if the prosecutor's comments and questions in the instant case were improper, they were mild, ambiguous, and harmless. However, we have previously indicated that ambiguity alone does not save such statements from the application of the *Doyle* rule, *United States v. Stevens*, 538 F.2d 1203 (5 Cir. 1976), and warned that the "infusion of 'harmlessness' into error must be the exception, and the doctrine must be sparingly employed" in this context. *Chapman v. United States*, 547 F.2d 1240, 1250 (5 Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977). Obviously, the best course is for prosecutors to "scrupulously avoid all reference to or use of [the] accused's assertion of his right to remain silent." *United States v. Wycoff*, 545 F.2d 679, 682 (9 Cir. 1976), *cert. denied*, 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556 (1977).