**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(D)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

The State, Respondent,

v.

Jake Antonio Wilson, Petitioner.

Appellate Case No. 2012-212043

---

**ON WRIT OF CERTIORARI TO THE COURT OF APPEALS**

---

Appeal from Charleston County
Deadra L. Jefferson, Circuit Judge

---

Memorandum Opinion No. 2014-MO-027
Heard June 10, 2014 – Filed July 9, 2014

---

**AFFIRMED**

---

Appellant Defender LaNelle Cantey DuRant, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, Assistant

Attorney General Brendan Jackson McDonald, all of Columbia, for Respondent.

---

**PER CURIAM:** Petitioner was convicted of murdering his former girlfriend and possessing a firearm during the commission of a violent crime and received concurrent sentences of life (murder) and five years (firearm).  He raised only one issue on direct appeal, contending the trial court committed reversible error in allowing testimony that petitioner invoked his right to counsel after an initial waiver in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976).[1]  The Court of Appeals affirmed in an unpublished opinion, *State v. Wilson*, Op. No. 2012-UP-99 (S.C. Ct. App. filed February 22, 2012), and this Court granted certiorari to review this evidentiary holding.  We agree with petitioner that the Court of Appeals erred in upholding the admission of this evidence but find the error harmless and therefore affirm.

## FACTS

The victim died from a single gunshot to the head.  She was shot at approximately 5:00 am in her own bed with her two year-old son beside her and her five year-old daughter in the apartment.  Petitioner, the father of the two children and the victim's ex-boyfriend of nine years, admitted in his trial testimony that he was holding the gun when the victim was shot.  He contended, however, that he was just waving it around when the victim, who was asking him to stop "playing around," hit his hand/the gun causing it to discharge.

There was evidence that petitioner's reaction to the shooting was overly dramatic and that his overreaction was insincere, especially from neighbors who were familiar with the couple and with the fact the victim had "put petitioner out" about six weeks before the shooting.  Further, the victim's sister testified that petitioner had threatened the victim about two days before her death, stating, "Tell [victim] I'm going to kill her, and she don't know when I'm coming."

The State was unable to produce forensic evidence that absolutely refuted petitioner's contention that the shooting was the accidental result of the victim's actions.  In support of this theory, the defense presented two experts.  The first

---

[1] As discussed *infra*, this case does not involve a traditional application of the *Doyle* rule.

expert testified his DNA analysis supported petitioner's statement that the victim hit the gun, as he found DNA from both the victim and petitioner on the handgun. The second defense expert stated that his testing methods allowed him to detect trace amounts of gunshot residue below the thresholds used by SLED. He opined that he would have expected to find much higher levels of residue on the victim's hands if she had been in a defensive posture when the shot was fired.

During its case-in-chief, the State called Det. Goldstein. Det. Goldstein testified he went to the police station to interview petitioner, who had been brought there after the shooting. An *in camera* hearing was held, and Det. Goldstein testified that after petitioner was read his *Miranda*[2] rights, he answered Det. Goldstein's questions for about twenty minutes before stopping and asking for a lawyer. In speaking with Det. Goldstein, petitioner initially maintained that he had been on the apartment's stairs when the victim was shot, but as the detective's questions zeroed in on the plausibility of the five year-old daughter or the two year-old son being the shooter, petitioner became quite agitated and subsequently asked for an attorney, ending the questioning. Petitioner testified *in camera* that he asked for a lawyer several times before his request was honored.

Petitioner's motion to suppress his statements to Det. Goldstein was denied. Before the jury returned, petitioner asked that Det. Goldstein not be permitted to testify that petitioner had invoked his right to counsel after first waiving his *Miranda* rights and answering questions for twenty minutes. The judge denied this request, stating "it's part of what happened . . . you have to show me a case that says they can't do that." Counsel cited *Doyle*, *supra*, but the trial judge held that the fact that petitioner asked for counsel after twenty minutes was admissible as "part of the investigative process."

When Det. Goldstein testified before the jury, this exchange took place before he related the substance of petitioner's answers:

> Q. Did [petitioner] later change his mind and ask to speak to an attorney?
>
> A. Yes, he did.
>
> [Petitioner's Attorney]: Objection, Your Honor.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Court:  Basis?

[Petitioner's Attorney]:  Comment upon one's exercise of these
rights.

The Court:  Overruled.  It was part of the investigation.  You
may continue.

Det. Goldstein was asked the same question again and affirmed that petitioner changed his mind and asked for an attorney.

The Court of Appeals found no error in the trial court's admission of evidence that petitioner invoked his right to counsel.  The court reasoned there was no *Doyle* violation because petitioner's invocation of his right after speaking with Det. Goldstein was not introduced as substantive evidence of petitioner's guilt.  *State v. Wilson*, *supra*.  We granted petitioner's request for a writ of certiorari to review this decision.

## ISSUE

Did the Court of Appeals err in affirming the trial court's admission of evidence of petitioner's invocation of his right to counsel and if so, does that error warrant reversal?

## ANALYSIS

In *Doyle*, the Supreme Court held that it was a violation of a criminal defendant's due process rights to permit the State to impeach him with evidence that he remained silent after being given *Miranda* warnings.  The Court later held there was no *Doyle* violation, however, where a defendant who chose to speak after being warned had his trial testimony impeached by his voluntary post-*Miranda* statements to police.  The Court held:

Doyle bars the use against a criminal defendant of silence
maintained after receipt of governmental assurances.  But *Doyle*
does not apply to cross-examination that merely inquires into
prior inconsistent statements.  Such questioning makes no
unfair use of silence, because a defendant who voluntarily

> speaks after receiving *Miranda* warnings has not been induced
> to remain silent. As to the subject matter of his statements, the
> defendant has not remained silent at all. See *United States v.
> Agee*, 597 F.2d 350, 354-356 (CA3) (en banc), cert. denied, 442
> U.S. 944, 99 S. Ct. 2889, 61 L.Ed.2d 315 (1979); *United States
> v. Mireles*, 570 F.2d 1287, 1291-1293 (CA5 1978); *United
> States v. Goldman*, 563 F.2d 501, 503-504 (CA1 1977), cert.
> denied, 434 U.S. 1067, 98 S. Ct. 1245, 55 L.Ed.2d 768 (1978).
>
> *Anderson v. Charles*, 447 U.S. 404, 408 (1980).

That *Doyle* does not apply to bar impeachment when a *Mirandized* defendant waives his rights to remain silent and chooses to speak is well-settled. *See also Babick v. Berghuis*, 620 F.3d 571 (6th Cir. 2010).

Here, however, we are not concerned with the State's right to impeach petitioner with his post-*Miranda* statement to Det. Goldstein, or with the admissibility of the contents of that exchange as part of the State's case-in-chief. Rather, the issue here is the State's right to introduce evidence in its case-in-chief that petitioner's interrogation ended because he invoked his right to remain silent.

The Court of Appeals identified two bases for admitting Det. Goldstein's testimony that petitioner's questioning ceased when he asked for an attorney. First, it held the evidence that petitioner gave a statement and then invoked his right to silence demonstrated that the pre-invocation statement was voluntary. We do not see how this is so: the evidence of voluntariness comes from the pre-statement conduct by the police and factors personal to the defendant, not from the defendant's reason for terminating the interrogation. *See, e.g. State v. Carmack*, 388 S.C. 190, 694 S.E.2d 224 (Ct. App. 2010) (factors to be considered in determining whether, under the totality of the circumstances, a statement was voluntary include: the defendant's maturity, education, physical and mental health as well as the length and condition of custody, and any promises of leniency or threats of violence). Second, the Court of Appeals reasoned Det. Goldstein's testimony that questioning ended when petitioner invoked his rights served "to challenge [petitioner's] testimony that he was too intimidated to request counsel." The flaw in this reasoning is that while petitioner had testified at the *in camera* hearing, the jury had heard nothing from petitioner when Det. Goldstein testified. There was no testimony from petitioner to impeach at this juncture, and therefore this "challenge" rationale fails.

*Miranda* states that "where in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions . . . prior to invoking his right to remain silent." *Miranda* at 475-6. Accordingly, there is no question that petitioner was entitled to and in fact did invoke his right to remain silent. We agree with the First Circuit that a mid-interrogation assertion of *Miranda* rights is as protected as an immediate invocation and that permitting the government to use evidence of this invocation in its case-in-chief violates both *Miranda* itself and the policy underlying *Doyle*. As that circuit recognized, *Doyle* does not permit evidence that a defendant exercised his *Miranda* rights because this type of evidence "raises a clear inference of culpability." *U.S. v. Andujar-Basco*, 488 F.3d 549, 556 (1st Cir. 2007); *compare State v. Simmons*, 360 S.C. 33, 599 S.E.2d 448 (2004) (distinguishing post-*Miranda* conduct erroneously offered in case-in-chief as substantive evidence of guilt from proper use as impeachment). Here, the clear inference is that petitioner terminated his interview because his pre-invocation claim that he was not present when the victim was shot was patently untrue.

We hold the Court of Appeals erred in affirming the trial court's ruling permitting the State to offer evidence in its case-in-chief of petitioner's mid-interrogation assertion of his right to counsel. The jury was entitled to learn from Det. Goldstein that the interview ended but not that it did so because petitioner exercised his *Miranda* rights.

The State argues, and we agree, that under the circumstances of this case the error in admitting evidence that petitioner exercised his *Miranda* rights mid-interrogation does not warrant reversal. E.g. *State v. Smith*, 230 S.C. 164, 94 S.E.2d 886 (1956) (appellant bears burden of persuading court of reversible error). Petitioner does not challenge the voluntariness of his statement to Det. Goldstein in which he denied being in the bedroom when the victim was shot, and therefore that statement was properly admitted into evidence. When petitioner took the stand in his defense and told a different story, he acknowledged the falsity of his initial statement to Det. Goldstein. Thus petitioner himself confirmed the negative inference that he was not being truthful suggested by his mid-interrogation invocation of counsel. In light of petitioner's admission that his pre-invocation statement was untrue, and since following Det. Goldstein's testimony there was no further reference to petitioner's invocation of his right to an attorney either during the trial or in the solicitor's closing argument, we find petitioner has not met his burden of convincing us this error warrants reversal of his convictions. *State v. Smith*, *supra*.

## CONCLUSION

Although we do not agree with the Court of Appeals that there was no error on the part of the trial court, we find the error harmless under the circumstances and therefore, the Court of Appeals' decision is

**AFFIRMED**.

**TOAL, C.J., PLEICONES, KITTREDGE, HEARN, JJ., and Acting Justice James E. Moore, concur.**