Louis **GRIECO**, Petitioner, Appellant,

v.

Frank A. **HALL** et al., Respondents, Appellees.

No. 80–1398.

United States Court of Appeals, First Circuit.

Argued Oct. 9, 1980.
Decided Feb. 13, 1981.

---

Beth H. Saltzman, Boston, Mass., court appointed counsel, for petitioner, appellant.

Barbara A. H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Div., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Stephen R. Delinsky, Chief, Criminal Bureau, Needham, Mass., were on brief, for respondents, appellees.

Before ALDRICH, PELL * and CAMP-BELL, Circuit Judges.

PELL, Circuit Judge.

The petitioner, Louis Grieco, appeals pursuant to 28 U.S.C. § 2253 (1976) from a judgment of the district court, 487 F.Supp. 1193, denying his petition for a writ of habeas corpus. After a jury trial in March, 1976, Grieco was convicted of armed assault in a dwelling house and larceny of a motor vehicle and sentenced to a term of eighteen to twenty years imprisonment. The Massachusetts Appeals Court affirmed his conviction in *Commonwealth v. Grieco*, 5 Mass. App. 350, 362 N.E.2d 1204 (1977), ruling that the prosecutor's cross-examination of Grieco which referred to his failure to recount his exculpatory trial story to police earlier constituted harmless error in view of the overwhelming evidence of guilt. The Massachusetts Supreme Judicial Court denied further review.

* Of the Seventh Circuit, sitting by designation.

## I.

The evidence presented at trial established the following scenario. On the evening of March 21, 1969, burglars broke into and robbed the McFaul residence in Quincy. Neighbors found Mrs. McFaul bound to a chair with white adhesive tape. Police officers had noticed a white van parked in front of the house earlier. Mrs. McFaul stated that she also had seen a white van. Soon after the police arrived, the McFauls' son Herbert returned home to find that his coin collection, a bureau drawer, and a red plaid suitcase were missing.

Meanwhile Officer Tobin, who was on patrol a few miles away, heard a police broadcast about the robbery and proceeded to follow a white van which he observed driving from the general direction of the robbery. At one point, Tobin pulled alongside the van and looked directly at the driver whom Tobin later identified as the defendant.

Two other police cars, also responding to the police broadcast, pursued the van for over three miles. During the chase, Officer Brady in the first car pulled alongside the van and saw the driver, whom he later identified as the defendant, pass a gun to his passenger who in turn pointed it at the officers. As they passed the intersection of Pond and the Southern Artery, Brady saw an object thrown from the van. The following morning a .38 calibre revolver, containing five live cartridges with one chamber empty, was recovered at that intersection. An officer in the second cruiser, who never lost sight of the van during the chase, also identified the defendant as the driver of the van.

When the van finally stopped in a parking lot behind a store, one person fled from the passenger side and was never apprehended. A police officer testified that the defendant emerged from the driver's side and ran to the rear of the van where he was seized. Moments later, Sergeant Laracy arrived and recited *Miranda* warnings to the defendant. At the police station officers found a roll of white tape (the same brand as that used to bind Mrs. McFaul), one live .38 calibre cartridge, and a coin (which Herbert McFaul identified as part of his coin collection) on the defendant. Police officers retrieved from the van a red plaid suitcase bearing the name "McFaul," a gray metal box marked "Canadian half dollars 1940–1962," and a bureau drawer containing coins and postcards addressed to the McFaul home.

The defendant did not appear when called for trial on May 6, 1970. He was arrested in Alabama in January, 1975, and returned to Massachusetts for trial. No eyewitness identification of the defendant by the McFauls was possible as McFaul was blind, and his wife had died by the time of trial.

During the Commonwealth's direct examination, Officer Laracy testified that he had asked Grieco if he wished to make a statement after receiving *Miranda* warnings immediately after arrest and that the defendant had answered, "No."[1] Detective Rowell testified that he had confronted Grieco with the van's owner, James Powers, at the police station after arrest, that the defendant stated that he did not know Powers, and further stated that he (Grieco) was a hitchhiker.

Grieco took the stand and presented an exculpatory version of the incident at trial. He said that he and a deceased friend, Richard Callei, had been drinking and driving around that night. The defendant testified that Callei stopped the car to go into a nearby building for some unknown reason while the defendant walked over to an alley to urinate. At that moment, Grieco testified, he saw a van drive around the corner of the alley and saw two men run from the van into the woods. Minutes later the police arrived and arrested the defendant as he was walking past the van.

The defendant further testified that when he was arrested, Officer Tobin had

---

1. The petitioner has not objected to this particular question on appeal, and we note that neither the Massachusetts Appeals Court nor the federal district court interpreted the defendant's argument to include an objection on this basis.

accused him of almost running Tobin down with the van. Grieco said that he responded that he had no idea of what Tobin was talking about. Grieco said that he later told Tobin, in response to questioning at the station, that he did not know who was driving the van, and although he had seen "somebody" run out of the van, it was too dark to identify "them." Officer Tobin testified, to the contrary, that he had not asked Grieco who the driver was.

On cross-examination the prosecutor adverted to the defendant's failure to give his exculpatory story earlier:

Q: Did you tell [Laracy] that you were just urinating behind the building?

A: He didn't ask me.

Q: But your answer was you didn't tell him . . . that you were urinating behind the parking lot, is that right; yes or no?

[After objection, the court allowed the prosecutor to repeat the question.]

Q: Did you tell Sergeant Laracy that you were just urinating in the parking lot?

A: No.

\*     \*     \*     \*     \*     \*

Q: Did you direct the attention of the police to Mr. Callei and his car at that time [at the police station]?

A: They didn't ask any questions.

Q: Did you tell them?

A: No, they didn't ask.

\*     \*     \*     \*     \*     \*

Q: And during the entire time you were in the police station, did you at any time tell the police about Mr. Callei or that there was a car there?

A: [after objection] No, I didn't tell them anything.

The petitioner's counsel objected seasonably to each question.[2]

During his closing argument the prosecutor commented on the foraminous nature of the defendant's testimony and urged the jury to conclude that Grieco's silence was inconsistent with innocence:

And what about the Callei story? Does that make sense? He disappears. Does he tell the police about Callei? Here he has just been arrested, grabbed, knocked down. They are all over him. They stand him up and put cuffs on him and shove him into a cruiser. Does he say, "Hey, I was just urinating down here. My friend is right outside. He is parked up on Washington Street"?

Does that make sense to you? Incredible.

\*     \*     \*     \*     \*     \*

And once again, not to belabor the point, but not only at the scene but also at the police station there is no mention about his friend Callei. There is no mention that night to anybody about urinating. The first time that story was ever told—and I suggest it was a story—was right here when he testified on the stand the other day.

Does that make sense? Is that consistent with innocence?

Don't be fooled.

The petitioner did not object to the Government's closing argument.

## II.

The defendant alleges that the district court erred in holding that cross-examination regarding the defendant's post-arrest silence was at most harmless error. The petitioner contends that his case falls squarely within the prohibition of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976),[3] against impeaching the defend-

---

**2.** The district court addressed only the questions regarding Sergeant Laracy, stating that the petitioner failed to object to the latter line of questioning regarding Callei and his car at trial. The Massachusetts Appeals Court found, however, and the Government concedes on this appeal, that defense counsel did indeed raise timely objections to both lines of questioning.

*Commonwealth v. Grieco, supra*, 362 N.E.2d at 1209. Consequently, our analysis must address both inquiries.

**3.** It was noted in oral argument that the petitioner's trial occurred three months before the decision in *Doyle*. Although the Supreme Court has yet declined to decide whether or not *Doyle* is fully or partially retroactive, *Anderson*

ant's exculpatory story told for the first time at trial by cross-examining the defendant about his failure to recount the story at the time of arrest after being given *Miranda*[4] warnings. The defendants in *Doyle* had made no post-arrest statements.[5]

In *Doyle*, the Supreme Court held that such cross-examination violated due process. The Court reasoned that "[s]ilence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." 426 U.S. at 617, 96 S.Ct. at 2244 (footnote omitted). The Court also recognized that *Miranda* warnings convey the implied assurance that "silence will carry no penalty." *Id.* at 618, 96 S.Ct. at 2245.

■ *Doyle*, however, does not establish a rule which gives rise to constitutional error in every case in which the prosecutor refers to the defendant's post-arrest silence. The Court noted, for example, that inquiry into post-arrest silence would be permissible to contradict a defendant's trial testimony of an exculpatory version of events and claim that the same story had been told upon arrest. This use of silence does not directly impeach the exculpatory story, but instead challenges the defendant's trial version of post-arrest behavior. 426 U.S. at 619 n.11, 96 S.Ct. at 2245 n.11.

*The Inference of Cooperation*

Several courts have held inquiry into post-arrest silence not to be error where the prosecutor was not seeking to impeach the exculpatory story, but rather was challenging the defendant's trial testimony regarding post-arrest behavior. In *United States v. Mavrick*, 601 F.2d 921 (7th Cir. 1979), for example, the court ruled that prosecutorial questioning regarding the defendant's failure to explain his illegal conduct to authorities upon arrest was not error since the defendant himself had, on direct examination, implied that given the opportunity, he would have explained. The Court in *Mavrick* analogized its ruling to a line of cases which allow the Government to use a defendant's post-arrest silence to rebut the inference created by the defense that the defendant had fully and actively cooperated with law enforcement authorities. *See, e. g., United States v. Conlin*, 551 F.2d 534 (2d Cir.), *cert. denied*, 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977); *Stone v. Estelle*, 556 F.2d 1242 (5th Cir. 1977), *cert. denied*, 434 U.S. 1019, 98 S.Ct. 742, 54 L.Ed.2d 767 (1978); *United States v. Fairchild*, 505 F.2d 1378 (5th Cir. 1975). There is no fundamental unfairness inherent in permitting the Government to contradict an erroneous self-serving impression which the defendant's own testimony created. *United States v. Mavrick, supra*, 601 F.2d at 933. Once the defendant raises this issue at trial, the door is opened "to a full not just a selective development of that subject," *id., quoting United States v. Fairchild, supra*, 505 F.2d at 1383, and the defendant will not be permitted to use *Doyle* as a tool to fashion an uncontradicted and distorted version of post-arrest behavior.

■ In the case at bar, the district court ruled that the trial court had not committed error in allowing the cross-examination questioning in part because the "petitioner's direct testimony could arguably have created an inference that he had been cooperating with the police." However, we cannot

*v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 2181 n.1, 65 L.Ed.2d 222 (1980), we need not address that issue here. The First Circuit has applied *Doyle* to pre-*Doyle* convictions thereby granting retroactive effect. *See, e. g., Morgan v. Hall*, 569 F.2d 1161 (1st Cir.), *cert. denied*, 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1142 (1978) (conviction affirmed by state court in 1975); *Booton v. Hanauer*, 541 F.2d 296 (1st Cir. 1976) (conviction affirmed by state court in 1974).

4. *Miranda v. Arizona*, 384 U.S. 436, 467–73, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966).

5. Actually, while one defendant in *Doyle* remained completely silent, the other asked the arresting officers, "What's this all about?" and upon being told the reason for his arrest, expressed some exclamation of surprise. However, both the Court and the dissent in *Doyle* analyzed the issue as if both defendants had remained silent. *Anderson v. Charles, supra*, 100 S.Ct. at 2182 n.2.

uphold an interpretation of the facts in this case which would allow the exception to swallow the rule. While the defendant testified to a few answers he allegedly gave in response to police questioning, he never contradicted Officer Laracy's statement, given during the State's case *before* Grieco testified, that Grieco had refused to make a statement when read his *Miranda* rights. Moreover, the defendant in this case never affirmatively tried to establish that he had, or had attempted to, cooperate fully with law enforcement personnel as did the defendants in *United States v. Conlin, supra; Stone v. Estelle, supra; United States v. Fairchild, supra;* and *United States v. Maverick, supra.*[6]

*Prior Inconsistent Statements*

In *Anderson v. Charles*, 100 S.Ct. 2180, 2182 (1980), the Court ruled that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." At common law, witnesses traditionally could be impeached by their failure to assert a fact under prior circumstances in which they normally would have been expected to speak. *Jenkins v. Anderson*, 100 S.Ct. 2124, 2129 (1980) (*Doyle* does not bar prosecutorial mention of a defendant's pre-arrest, pre-*Miranda* silence). *Doyle* deviates from traditional practice in order to give meaning to a defendant's *Miranda* rights.

■ This does not mean that any time a defendant makes any post-arrest statement the door is open to full cross-examination about the defendant's failure to recount the exculpatory trial story earlier. *Miranda* protections apply equally to refusals to answer specific questions. *Booton v. Ha-*

nauer, 541 F.2d 296, 298 (1st Cir. 1976); *United States v. Ghiz*, 491 F.2d 599, 600 (4th Cir. 1974). But once a defendant makes post-arrest statements that may arguably be inconsistent with the trial story, inquiry into what was not said at arrest may be designed not "to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement.... Each of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version. But *Doyle* does not require any such formalistic understanding of silence...." *Anderson v. Charles, supra*, 100 S.Ct. at 2182.

In *Anderson v. Charles*, the prosecutor explicitly asked the defendant several times why he did not tell the police his exculpatory trial version of events. The Court reasoned that the questioning, considered in its entirety, did not refer to the defendant's exercise of his right to maintain silence upon arrest, but rather probed why, if the defendant's trial testimony was true, did he not tell the police officer that he had stolen the car from the parking lot (his trial story) instead of telling him that he took it from the street (his post-arrest statement). *Id.* at 2182. The Court cited *United States v. Mireles*, 570 F.2d 1287 (5th Cir. 1978), approvingly for the proposition that *Doyle* will not protect a defendant who chose not to remain silent after arrest about the subject matter of statements he later contradicts at trial. *Id.*

The defendant in *Mireles* was charged with possession of marijuana with intent to distribute. The narcotics agent, who found the drugs in the defendant's van at a border checkpoint, testified that after being given *Miranda* warnings, the defendant had said that the truck was borrowed from the defendant's uncle to move the defendant's furniture. At trial the defendant testified

---

**6.** Nor does *United States v. Dixon*, 593 F.2d 626 (5th Cir.), *cert. denied*, 444 U.S. 861, 100 S.Ct. 126, 62 L.Ed.2d 82 (1979), cited by the district court, compel a different conclusion. While that court found that an inference of cooperation arose solely from the defendant's testimony that he had spoken with a police officer "a number of times," the court did not rule that prosecutorial questioning regarding the defend-

ant's silence was not error; rather, the court assumed the error, but used this reasoning as one of five factors to hold the error harmless. *Id.* at 628, 630. Furthermore, the cases are factually distinguishable. In this case the Government presented evidence, which the defendant never attempted to rebut, that Grieco had refused to make a statement when read the *Miranda* warnings.

that he had been moving furniture for another individual at the time of arrest. The court held permissible the prosecutor's cross-examination of the defendant *and* closing remarks regarding the defendant's failure to tell the agents about the existence of the other individual, Mr. Rivas.[7]

The case at bar is indistinguishable from *Mireles*. We cannot agree with the petitioner that his post-arrest silence was "nearly complete" and "consistent with one who claimed the privilege of silence until he was advised by counsel to testify." As in *Mireles*, a government witness testified to Grieco's post-arrest statement which was inconsistent with his exculpatory trial story. Detective Rowell stated that, at the police station, Grieco had said that he was a hitchhiker. Furthermore, the prosecutor's questioning regarding the defendant's failure to explain to Officer Laracy or other police officers was permissible even though the inconsistent statement was made only to Detective Rowell. In *Mireles* the court permitted such questions in relation to both the arresting officer and the agent who eventually took the defendant to the station even though the inconsistent statement was made only to the first officer before the arrival of the second officer.

■■ It is clear that the rationale underlying *Doyle* is not implicated under such circumstances. As the court in *Mireles* reasoned, "[t]here is no 'insoluble ambiguity' of silence as noted in *Doyle*, since [the] defendant Mireles waived his right to remain silent, and denied knowledge" of the incident and, at one point, even proffered a partial alibi. "*Doyle's* protection of the right to remain silent does not apply to cross-examination and argument concerning a defendant's exculpatory explanation given after the *Miranda* warnings." 570 F.2d at 1293. When a defendant elects to make post-arrest statements and later contradicts them,

the prosecutor may "challenge him with those statements and with the fact that he withheld his alibi from them." *Lofton v. Wainwright*, 620 F.2d 74, 78 (5th Cir. 1980) (prosecutor may point out that defendant exercised his right to terminate post-arrest questioning and to argue to jury that defendant should have disclosed his alibi to the police where the defendant's trial story flatly contradicted earlier statements). *Cf. United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978), *cert. denied* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

In *Beechum*, the defendant was convicted of unlawful possession of an 1890 silver dollar stolen from the mails. After *Miranda* warnings were given, Beechum apparently made no comment about the silver dollar, but denied possessing any credit cards other than his own. When confronted with stolen credit cards from his wallet, he explained that they had not been used. The court allowed the arresting inspector's testimony and the closing argument comment that "Mr. Beechum gave no explanation for his possession of the silver dollar. In fact, he told [the inspector], 'You have all the answers, and I don't have any for you.'" The defendant offered a fully exculpatory account of his possession of the silver dollar at trial. The court ruled that:

Had Beechum in fact remained silent at the time of his arrest, we might entertain doubts as to the propriety of the testimony and comment. *See Doyle v. Ohio, . . .* Beechum, however, chose to speak . . . . .

The prosecutor's statement, therefore, is not a comment upon Beechum's silence but rather an appraisal of what Beechum said. In effect, the prosecutor was saying, "Beechum did not explain his possession of the silver dollar. In fact, he admitted that he had no explanation for it, because they already had all the answers." Under these circumstances, nei-

---

7. On cross-examination, the prosecutor asked the defendant:

    Q: And you didn't say anything about Mr. Rivas to Mr. Edwards, did you?
    A: No, sir.
    Q: You didn't say anything about Mr. Rivas to Mr. Havens here, either, did you?
    A: No, sir.

570 F.2d at 1292 n.8. During closing argument, the prosecutor elaborated further: "[O]nce he [the defendant] took the stand and decided to testify, that's when we get this business about Tio Rivas;" and "But did the Government ever know anything about Rivas? No, the Government never knew a word about Rivas." The court characterized these remarks: "These statements are plainly quite mild." *Id.*

ther the witness's testimony nor the prosecutor's remarks were improper. *United States v. Mireles* . . . .

582 F.2d at 906 (citations omitted).

In *Beechum*, while the court cites *Mireles* to support its ruling, the particular post-arrest statements Beechum made about the cards were not themselves inconsistent with the exculpatory trial story about the coin. Moreover, the defendant's statement that the inspector had all the answers was given in response to the inspector's questioning about the stolen credit cards, not about the coin. *Id.* at 904. Beechum was not prosecuted for possession of stolen credit cards. His exculpatory trial story related only to the coin. When questioned at trial about the credit cards, in fact, Beechum repeatedly invoked the Fifth Amendment. *Id.* at 905. Thus, the court seems to be expanding the *Mireles* holding to apply to a situation where the defendant has not maintained silence after arrest, but has made exculpatory post-arrest statements which are not themselves inconsistent with the exculpatory trial story, but which relate to different subject matter. The Fifth Circuit recently reasserted the validity of *Beechum* in *Lofton v. Wainwright, supra,* 620 F.2d at 78, where it stated that in *Beechum* "[w]e distinguished *Doyle,* observing that in *Doyle* the defendants had stood *absolutely* silent after receiving the *Miranda* caution while Beechum had not." (Emphasis added.)

In the case at bar, Grieco's exculpatory trial story clearly was inconsistent with his post-arrest statement that he was a hitchhiker. We therefore need not decide whether or not this Circuit would adopt *Beechum's* expansive interpretation because this case falls within the Supreme Court's holding in *Anderson v. Charles, supra,* that *Doyle* does not apply to inquiry regarding post-arrest statements inconsistent with exculpatory trial testimony.

For the reasons stated above, we hold that the challenged cross-examination was not erroneous.

### III.

The district court ruled, that while the closing argument was of greater con-

cern to it than the cross-examination in this case, the petitioner's failure to exhaust his state remedies on this issue bars habeas corpus relief. We need not decide whether the district court's denial of the writ on exhaustion grounds is correct because we hold that, even assuming exhaustion, the prosecutor's reference to the defendant's post-arrest silence in closing argument did not constitute error. Such closing argument commentary has been upheld where, as here, evidence of the defendant's failure to offer his exculpatory story earlier was admissible to challenge the defendant's post-arrest statements inconsistent with his trial story. *See, e. g., Lofton v. Wainwright, supra; United States v. Mireles, supra. Cf. United States v. Beechum, supra.*

*The judgment of the district court denying the writ of habeas corpus is, in accordance with this opinion, affirmed.*