**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-60673.

Robert Mitchell PITTS, Plaintiff-Appellant,

v.

James V. ANDERSON, Superintendent, Mississippi State
Penitentiary, Defendant-Appellee.

Sept. 19, 1997.

Appeal from the United States District Court for the Southern
District of Mississippi.

Before KING, DAVIS and DeMOSS, Circuit Judges.

DAVIS, Circuit Judge:

Mississippi state prisoner Robert Mitchell Pitts appeals from
the district court's denial of his habeas corpus petition filed
pursuant to 28 U.S.C. § 2254. Pitts alleges that the prosecutor in
his state trial improperly impeached him using his post-*Miranda*[1]
silence, in violation of *Doyle v. Ohio,* 426 U.S. 610, 619-20, 96
S.Ct. 2240, 2245-46, 49 L.Ed.2d 91 (1976). Concluding that the
prosecutor's questions and comments do not violate *Doyle,* we affirm
the judgment of the district court and deny the writ of habeas
corpus.

I.

This case arises from an incident occurring in the early
morning of January 14, 1990, in a rural part of Wayne County,

---

[1]*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d
694, (1966).

1

Mississippi. Pitts had been deer hunting and two of his dogs were loose. He received a report that his dogs were at the home of 68-year-old Pauline Smithinger and her 77-year-old cousin, Roy Baggett. Pitts was told that Smithinger had tied up the dogs and was going to kill them unless the owner came for them. Around one o'clock in the morning, Pitts went to Smithinger's home. Finding the gate to Smithinger's yard locked, Pitts shot off the lock with his rifle. He then went in and retrieved his dogs.

There is some dispute as to what happened next, as Pitts's and Smithinger's versions of the events conflict. At trial, Pitts testified that Smithinger came out of her house trailer and yelled obscenities at him as he attempted to explain that he was there to pick up his dogs. He further testified that Baggett came out of the trailer with a pistol and began shooting at him. Pitts then retrieved his rifle from his truck, where he had put it after shooting the lock. According to Pitts, Smithinger grabbed the rifle barrel and shook it. While Smithinger was shaking the rifle, it went off several times, striking Baggett in the arm and severing an artery. Pitts testified that he offered to bring Baggett to the hospital, but Smithinger refused. Pitts then went back to his deer camp and went to sleep. Baggett bled to death several hours later.

Smithinger testified that she was awakened early the morning of January 14 when Pitts came to her house to get his dogs. She told him that it was late and urged him to come back at a more reasonable time. She testified that Pitts was holding a rifle and had his finger on the trigger. Baggett then came out of the house

2

and Pitts turned and pointed his rifle at him.[2] Smithinger grabbed the rifle so that it would fire into the air, but Pitts shook her away. Pitts then shot Baggett. Smithinger testified that Pitts did not offer to help Baggett, but instead got into his truck and drove away.

Later that morning, Sheriff Marvin Farrior went to Pitts's deer camp and arrested him. After being advised of his *Miranda* rights, Pitts first told the sheriff that he did not know what the sheriff was talking about. The sheriff then told Pitts that he would need to see the gun that he had with him the previous night. Pitts then told the sheriff that "a man come out on [me]. The man come out on me with a gun." The sheriff asked what kind of gun, and Pitts replied "a pistol." Pitts made no further statements regarding what happened at Smithinger's home.

Pitts was indicted and tried for murder. Pitts's defense at trial was that his rifle accidentally discharged during his tussle with Smithinger. During direct examination of Sheriff Farrior, the prosecution elicited testimony that after being read his *Miranda* rights, Pitts stated that "a man come out on him. The man come out on me with a gun." The prosecutor then inquired whether Pitts had told the sheriff about Baggett firing the gun or Smithinger grabbing the rifle while the shots went off. The sheriff responded that "[h]e didn't tell me anything about that."

---

[2]Smithinger testified that Baggett had a pistol tucked in his belt, but that he never raised it at Pitts, and certainly never fired it at him. Smithinger testified that Baggett had fired the pistol earlier in the evening to scare away coyotes.

3

The prosecution asked similar questions of Pitts on cross-examination. Pitts responded that "I didn't tell the sheriff nothing else after I told him he come on me with a pistol." During closing argument, the prosecutor returned to Pitts's failure to include the accidental nature of the shooting in his original statement to Sheriff Farrior, arguing that:

> The sheriff said, I have a warrant for your arrest, Mr. Pitts. He said, I don't know what you are talking about. He didn't say, oh, sheriff, it was a terrible accident. I don't know what you are talking about, he said.... He told the sheriff, he came on me with a gun. He didn't say it was an accident. He didn't say Mrs. Pauline [Smithinger] had her finger on the trigger and fired the gun. He didn't say it occurred during a tussle. All he said was, he came on me with a gun.

The prosecutor then suggested that some time after speaking with the sheriff, Pitts learned that the pistol had been fired and fabricated the story about Baggett firing to conform with the evidence. Pitts's counsel failed to object to most of the prosecution's questions and comments regarding omissions in Pitts's post-arrest statement.

The jury convicted Pitts of manslaughter, and he was sentenced to 20 years imprisonment. On direct appeal, the Mississippi Supreme Court affirmed Pitts's sentence and conviction. Pitts's counsel did not raise the *Doyle* issue on direct appeal. Pitts then filed a state habeas corpus petition, arguing for the first time that the prosecutor's statements regarding his post-*Miranda* silence violated *Doyle*. The Mississippi Supreme Court denied Pitts's petition, holding that Pitts's habeas claims were "barred from

4

consideration by Miss.Code Ann. § 99-39-21[3] and fail to present a substantial showing of the denial of a state or federal right as required by Miss.Code Ann. § 99-39-27."[4]

Pitts then filed a federal petition for writ of habeas corpus. In his report and recommendation, the magistrate judge, concluding that the prosecutor impeached Pitts on his post-*Miranda* statements, rather than on his silence, recommended that Pitts's petition be denied.  The district court adopted the magistrate judge's report and recommendation and added that even if there was *Doyle* error, it did not justify habeas relief because it did not influence the jury's verdict.  *See Brecht v. Abrahamson,* 507 U.S. 619, 626, 113 S.Ct. 1710, 1716, 123 L.Ed.2d 353 (1993) (announcing standard of review of *Doyle* error in habeas cases).  Pitts timely appealed.

## II.

### A.

---

[3]Section 99-39-21(1) provides that:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

[4]Section 99-39-27(5) provides, in relevant part, that:

> Unless it appears from the face of the application ... that the claims presented by such are not procedurally barred under section 99-39-21 and that they further present a substantial showing of the denial of a state or federal right, the court shall by appropriate order deny the application.

5

Before addressing the putative *Doyle* violation, we must consider the state's argument that Pitts's petition was properly dismissed because of a procedural default. We review the district court's denial of federal habeas relief based on a state procedural ground *de novo*. *Livingston v. Johnson,* 107 F.3d 297, 311 (5th Cir.1997); *Amos v. Scott,* 61 F.3d 333, 338 (5th Cir.1995). As described above, Pitts's attorneys failed to object at trial to the prosecutor's questions and comments and failed to raise his *Doyle* argument on direct appeal. Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the state based its rejection of that claim on an adequate and independent state ground. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2564, 115 L.Ed.2d 640 (1991); *Martin v. Maxey,* 98 F.3d 844, 847 (5th Cir.1996).

Where, as here, a state court clearly and expressly states that its judgment rests on a state procedural bar, a presumption arises that the state court decision rests on independent and adequate state law grounds. *See Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989); *Martin,* 98 F.3d at 847. A defendant may rebut this presumption by establishing that the procedural rule is not strictly or regularly followed by the state courts. *See Moore v. Roberts,* 83 F.3d 699, 702 (5th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). Pitts, however, does not argue that § 99-39-21(1) is not strictly or regularly applied, and he therefore fails to rebut the presumption.

Nonetheless, Pitts may still prevail by demonstrating (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750, 111 S.Ct. at 2564. Pitts attempts to demonstrate cause by arguing that his attorney's failure to object and raise the *Doyle* issue on appeal constituted ineffective assistance of counsel. *See Coleman,* 501 U.S. at 753-54, 111 S.Ct. at 2566-67 ("Attorney error that constitutes ineffective assistance of counsel is cause.").

To establish ineffective assistance of counsel, Pitts must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In determining whether an attorney's performance is deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. at 2065 (internal quotation omitted). "Our scrutiny of counsel's performance [is] "highly deferential,' and we must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " *Motley v. Collins,* 18 F.3d 1223, 1226 (5th Cir.) (quoting

7

*Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065), *cert. denied,* 513 U.S. 960, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994). If, and only if, "we adjudge counsel's performance to have been deficient, then we must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different." *Sharp v. Johnson,* 107 F.3d 282, 286 n. 9 (5th Cir.1997).

For reasons that follow, we conclude that the prosecutor's questions and comments did not violate *Doyle* and, accordingly, that Pitts's attorney was not deficient in failing to object to the comments and to raise the *Doyle* issue on appeal. *See Turner v. Johnson,* 106 F.3d 1178, 1187 (5th Cir.1997).

### B.

In *Doyle,* the Supreme Court held that a prosecutor's use of a defendant's post-arrest, post-*Miranda* silence for impeachment violated due process. As subsequent cases have made clear, *Doyle* forbids the government's exploitation of silence after the government has helped induce that silence by informing a defendant of his right to remain silent. *Jenkins v. Anderson,* 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86 (1980) (Pre-arrest silence may be used for impeachment because "no governmental action induced [the defendant] to remain silent before arrest"); *Fletcher v. Weir,* 455 U.S. 603, 606, 102 S.Ct. 1309, 1311, 71 L.Ed.2d 490 (1982) (per curiam) (Post-arrest statements made before *Miranda* warnings are given may be subject to prosecutorial comment).

In *Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180,

8

2182, 65 L.Ed.2d 222 (1980) (per curiam), the Supreme Court explained that when a defendant makes a *post-Miranda* statement that is inconsistent with his testimony at trial, *Doyle* does not bar impeachment based on the prior inconsistent statements. The Court reasoned:

> *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. *Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.*

*Id.* (emphasis added).

However, *Charles* does not mean that anytime a defendant makes a post-*Miranda* statement the prosecution has carte blanche to use the defendant's silence to impeach him. *See, e.g., United States v. Laury,* 985 F.2d 1293, 1303-04 (5th Cir.1993) ("That [the defendant] did not remain completely silent following his arrest did not give the prosecutor unbridled freedom to impeach [him] by commenting on what he did not say following his arrest."). Where prosecutorial comments are "designed to draw meaning from silence," *Charles,* 447 U.S. at 409, 100 S.Ct. at 2182, they remain subject to the rule in *Doyle.* In other words, prosecutorial statements that are either intended to or have the necessary effect of raising a negative inference simply because of the defendant's exercise of his right to remain silent are prohibited. However, where a prosecutor's questions and comments are aimed at eliciting an explanation for an arguably prior inconsistent statement, no *Doyle* violation occurs. *Id.*

9

While this distinction may at times be subtle, *see Smith v. Cadagin,* 902 F.2d 553, 557 (7th Cir.1990) ("Certainly there is a fine line between impeachment by showing a curious incompleteness in a suspect's story and impeachment from silence.") (quoting *Phelps v. Duckworth,* 772 F.2d 1410, 1421 (7th Cir.1985) (en banc) (Easterbrook, J., concurring)), evaluating the prosecutor's comments in the context of the entire record resolves most cases. As we have previously explained:

> The alternative tests for determining whether a prosecutor's or witness's remarks constitute comment on a defendant's silence are whether the "manifest intent" was to comment on the defendant's silence or, alternatively, whether the character of the remark was such that the jury would "naturally and necessarily" construe it as a comment on the defendant's silence. Both the intent of the prosecutor and the character of the remarks are determined by reviewing the context in which they occur, and the burden of proving such intent is on the defendant.

*United States v. Shaw,* 701 F.2d 367, 381-82 (5th Cir.1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984) (quoted in *Laury,* 985 F.2d at 1303).

Our Circuit has had few occasions to address the application of *Doyle* to cases in which a defendant's post-arrest and trial statements, while not impossible to reconcile, are arguably inconsistent. In fact, only one opinion of this court, *United States v. Laury,* is even analogous to the present scenario. In *Laury,* the defendant was arrested for bank robbery. At the time of his arrest and after being read his *Miranda* rights, Laury made a statement to the police in which he admitted making numerous large cash expenditures shortly after the date of the robbery but stated that he obtained the money for the purchases from two jobs, his

10

girlfriend, and his girlfriend's grandmother. At trial, Laury asserted for the first time, as did three alibi witnesses, that he was out of town attending a cousin's birthday party on the date of the robbery. On cross-examination and in closing argument, the prosecutor made much of the fact that Laury had not included the new alibi information in his original statement to the police. In holding that the prosecutor's comments violated *Doyle,* we reasoned that because Laury's testimony at trial dealt with subject matter—his whereabouts at the time of the robbery—not addressed in his post-arrest statement, "nothing [he] told the FBI agents was inconsistent with his trial testimony that he was at a birthday party on the date of the bank robbery." *Id.* at 1303. Because there was no inconsistency, we viewed the prosecutor's remarks as comments on Laury's post-arrest silence in violation of *Doyle. Id.* at 1303-04.

While instructive, *Laury* does not control this case. *Laury* establishes that where a defendant's testimony at trial deals with subject matter not addressed in his post-arrest statement, there can be no inconsistency between the statements and, therefore, *Charles* is inapplicable. Stated differently, where a defendant's testimony at trial does not deal with the same subject matter as his pre-trial statement, a prosecutor's remarks on omissions in the pre-trial statement is considered a plea for the jury to infer guilt or other negative inferences from the defendant's exercise of his Fifth Amendment rights. In essence, this is the necessary corollary to the Supreme Court's pronouncement in *Charles* that

11

"*[a]s to the subject matter of his statements,* the defendant has not remained silent at all." 447 U.S. at 408, 100 S.Ct. at 2182 (emphasis added).

In the present case, however, Pitts' post-arrest and trial statements concerned the same subject matter—the events leading up to the shooting. The question we must decide is whether Pitts's statement post-arrest—the victim "come out on me with a gun"—is sufficiently inconsistent with his trial testimony—Smithinger shook the rifle and the shooting was accidental—to conclude that the prosecutor's comments were designed and had the effect of highlighting the arguable inconsistency, rather than commenting on Pitts's exercise of his right to remain silent.

Most courts to address similar issues have held that where post-arrest and trial statements involve the same subject matter and where the post-arrest statement is sufficiently incomplete as to be "arguably inconsistent," i.e. where the implications of the statements, if not their language, suggests they may be inconsistent, *Charles* applies and comment upon the omissions is permitted.

For example, in *Smith v. Cadagin,* 902 F.2d 553 (7th Cir.1990), the Seventh Circuit determined prosecutorial comment on a defendant's omission in his post-arrest statement did not violate *Doyle.* There, a defendant, charged with unlawful restraint and intimidation arising from an incident in which he attempted to force a woman to accompany him at gunpoint, made a post-arrest statement that the situation "got out of hand." He then testified

12

for the first time at trial that his actions were meant as a "practical joke." The prosecutor cross-examined the defendant and commented during closing argument concerning his failure to tell the police that his actions were meant as a practical joke. The court reasoned that there was no *Doyle* violation because the defendant "voluntarily commented upon his participation in the incident and quite gratuitously characterized the event as one that "got out of hand.' At trial, he returned to the same "subject matter' ... and used another verbalization to characterize his acts—a "practical joke.' " *Id.* at 559. Consequently, "[t]he prosecutor's cross-examination was limited to the defendant's earlier description of the encounter and was not ... an attempt to exploit the defendant's silence—the gravamen of the error condemned in *Doyle.*" *Id.*

The Ninth Circuit reasoned similarly in *United States v. Makhlouta,* 790 F.2d 1400 (9th Cir.1986). There, the court found no *Doyle* error where a defendant stated post-arrest that he distributed cocaine in part because he had not anticipated being detected and at trial claimed for the first time that he had been entrapped. Noting *Charles*'s observation that " "[a]s to the subject matter of his statements, the defendant has not remained silent at all,' " the court concluded that both statements "address the subject matter of why he sold heroin" and were arguably inconsistent. *Id.* at 1404 (quoting *Charles,* 447 U.S. at 408, 100 S.Ct. 2182). The court further explained that "once a defendant makes post-arrest statements that "may arguably be inconsistent

13

with the trial story,' he has raised a question of credibility. The government, to provide all relevant evidence bearing on credibility, "may probe all post-arrest statements and the surrounding circumstances under which they were made, including defendant's failure to provide critical details.' " *Id.* at 1404 (citations omitted).

Likewise, in *United States v. Butler,* 924 F.2d 1124 (D.C.Cir.), *cert. denied,* 502 U.S. 871, 112 S.Ct. 205, 116 L.Ed.2d 164 (1991), a defendant charged with possession with intent to distribute cocaine made a post-arrest statement that he obtained the drugs from a known dealer and that he was "just getting ready to drop it off." At trial, he testified for the first time that, in an effort to get even with the dealer, he took the drugs and was heading to the police station to turn them in when he was arrested. The D.C. Circuit allowed cross-examination on why the defendant did not include that information in his original statement to police, explaining that "[t]he prosecutor was entitled to examine [defendant] regarding his ambiguous, if not inconsistent, statement to [the officer]" and that defendant's "initial omission from his explanation of the pivotal fact ... is simply not the kind of "silence' protected under *Doyle.*" *Id.* at 1129-30.

The Eighth Circuit adopted this same approach in *United States v. Schultz,* 698 F.2d 365 (8th Cir.1983). There, a defendant charged with attempted extortion admitted post-arrest to picking up a package of money left by a bank manager who received a threatening phone call and then testified at trial for the first

14

time that he was in the area to meet a friend. The court held that the prosecutor's comments on the defendant's failure to mention the reason for his presence—to meet a friend—in his post-arrest statement did not violate *Doyle.* The court reasoned that "when [defendant] chose to testify at trial, he was subject to cross-examination with respect to his prior, arguably inconsistent statement concerning the same subject matter." *Id.* at 367.

Similarly, in *Grieco v. Hall,* 641 F.2d 1029 (1st Cir.1981), a defendant was arrested outside a vehicle that the police had been chasing from the scene of a robbery. Defendant made a post-arrest statement that he did not know the owner of the getaway vehicle and that he was a hitchhiker. At trial, he testified that he was merely urinating behind a building next to where the vehicle stopped. The First Circuit allowed prosecutors to inquire into why he didn't include that information in his post-arrest statement, holding that "once a defendant makes post-arrest statements that may arguably be inconsistent with the trial story, inquiry into what was not said at arrest may be designed not "to draw meaning from silence,' but to elicit an explanation for a prior inconsistent statement." *Id.* at 1034 (quoting *Charles,* 447 U.S. at 409, 100 S.Ct. at 2182).

We agree with the near uniform approach of our sister circuits and hold that where a defendant's post-arrest statement addresses the same subject matter as his trial testimony and is arguably inconsistent with that testimony, a prosecutor's questions and comments designed to highlight the inconsistency do not violate

15

*Doyle.* Such questions are simply not designed to cause the jury to infer guilt because of the defendant's exercise of his Fifth Amendment rights. Rather they are intended to probe and explain the defendant's post-arrest statement and the circumstances under which it was made. Because a defendant has not remained silent as to the subject matter of his post-arrest statements, *Charles,* 447 U.S. at 408, 100 S.Ct. at 2182 such questions do not use a defendant's government-induced silence against him and, thus, do not fall within the purview of *Doyle*[5]

Applying this standard to the present case, we conclude that no *Doyle* error occurred. While Pitts's post-arrest statement that the victim "come out on me with a gun" and his trial testimony that Smithinger grabbed the gun and the shooting was an accident are not necessarily inconsistent, they do concern the same subject matter and their implications are arguably inconsistent: Pitts's statement that the victim came out with a gun suggests the shooting may have been in self-defense, while his trial testimony suggests the shooting was accidental. Because the statements concern the same subject matter and are arguably inconsistent, the prosecutor's questions and comments regarding Pitts's failure to include facts supporting the accidental nature of the shooting in his post-arrest

---

[5]*Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) is not to the contrary. The issue in *Brecht* was the standard for determining harmless error for a "*Doyle* " error on collateral review. The Supreme Court had no difficulty finding *Doyle* error because the petitioner made *no* statement after he was given his *Miranda* warnings and the prosecutor called this fact to the jury's attention. The court concluded, however, that the error was harmless because it did not "substantially influence" the jury's verdict.

16

statement do not violate *Doyle.* Pitts waived his right to remain silent as to the subject matter of his post-arrest statement, and the prosecutor's comments can fairly be described as designed to highlight the arguable inconsistency between Pitts's statements, rather than drawing some inference from his exercise of his Fifth Amendment rights.

### III.

Because the prosecutor's comments did not violate *Doyle,* Pitts has failed to demonstrate ineffective assistance of counsel or other cause for his failure to object to the prosecutor's comments in a timely fashion. Accordingly, Pitts's application for federal habeas relief is barred by the procedural default rule, and the district court's judgment denying his habeas petition is AFFIRMED.

AFFIRMED.

DeMOSS, Circuit Judge, Specially Concurring:

I agree with the majority that we should affirm the judgment of the district court which denied habeas relief. However, I agree for reasons which are different from those expressed by the majority.

In my view, this case is controlled by the Supreme Court's decision in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), both as to whether *a Doyle*[1] error occurred in Pitts' trial, and as to whether the occurrence of such error justified reversal of the state conviction on collateral review by

---

[1]*Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

17

the federal courts under habeas corpus.

The circumstances involved in the instant case and in *Brecht* are strikingly similar. Both cases involve state prosecutions for murder in which the defendant took the stand at trial and testified as to circumstances which he claimed show that the shooting was accidental. In both cases, the defendant more or less admitted firing the fatal shots. In both cases, there was significant testimony as to the defendants' actions (after the shooting, but before arrest), which tended to contradict their respective claims of accident. In both cases, on cross-examination, the prosecutor asked the defendant whether he had told the arresting officer, or anyone else, anything about the accidental circumstances which he now claimed at trial. Additionally, in Pitts' case, the prosecutor asked the arresting officer on direct examination whether Pitts had spoken about accidental circumstances.

In holding that *Doyle* error did occur in *Brecht*, the Supreme Court drew a distinction between proof of the defendant's conduct and statements *before* the time he received his *Miranda*[2] warnings, and proof of the defendant's conduct and statements *after* he received the *Miranda* warnings. The Supreme Court stated:

> On the other hand, the State's references to petitioner's silence after that point in time [when the *Miranda* warnings were given] or more generally to petitioner's failure to come forward with his version of events at any time before trial ... crossed the *Doyle* line. For it is conceivable that, once petitioner has been given his *Miranda* warning, he decided to stand on his right to remain silent because he believed his silence would not be used against him at trial.

---

[2]*Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

18

*Brecht,* 113 S.Ct. at 1717 (internal reference omitted). In my view, *Brecht* is on point. As in *Brecht,* the prosecutor in our case was clearly attempting to show (during both his direct questioning of the arresting officer and his cross-examination of Pitts) that, following Pitts' arrest and his receipt of the *Miranda* warning, Pitts did not speak about the very accidental circumstances of which he chose to speak at trial. In my book, remaining silent and not speaking are one and the same thing.

To circumvent *Doyle* and *Brecht,* the majority would fashion a new rule premised upon an extension of the Supreme Court's holding in *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (holding that *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements). The majority's new rule would extend the *Charles* holding to circumstances when the Court can conclude that a defendant's trial statements are "arguably inconsistent" with his prior statements. For the following reasons, I cannot concur in this new rule:

> a. Neither in *Charles,* nor in any later decision, has the Supreme Court recognized the concept of "arguable inconsistency."

> b. Prior to this opinion, no case in the Fifth Circuit has recognized the concept of "arguable inconsistency" as a basis for applying the *Charles* exception to *Doyle.*

> c. The decision of the Fifth Circuit in *United States v. Laury,* 985 F.2d 1293 (5th Cir.1993), clearly holds that *actual* inconsistency between a post-arrest statement and a trial statement is essential before the prosecutor can cross-examine the defendant in regard thereto. *Laury,* 985 F.2d at 1303 ("Therefore, nothing Laury told the FBI agents was inconsistent with his trial testimony that he was at a party on the date of the bank robbery. The prosecutor did not comment on what Laury told FBI agents, but on what he did not tell them.")

19

d. All of the cases from other Circuits upon which the majority relies for its concept of "arguable inconsistency" were decided before the decision of the Fifth Circuit in *Laury.* Tellingly, *Laury* does not cite any of the cases upon which the majority now seeks to rely for its new rule.

e. The Supreme Court's *Brecht* decision (April 1993) came after the Fifth Circuit's *Laury* decision (March 1993), and after all of the Circuit Court decisions cited by the majority in support of its "arguable inconsistency" rule.

f. The defendant in *Brecht* testified at trial as to circumstances which he claimed showed that the shooting was an accident. Yet, in deciding the case, the Supreme Court did not cite, or refer to, any of the Circuit Court decisions which articulate the "arguably inconsistent" theory, upon which the majority now relies. Brecht's testimony at trial was just as "arguably inconsistent" with his prior silence as was Pitts' testimony at trial with his prior silence.

g. The concept of "arguable inconsistency" is fraught with ambiguity and borders upon being an oxymoron[3]. For Statement A to be inconsistent with Statement B, all or some portion of Statement A must contradict all or some portion of Statement B. If Statement B speaks to a fact or condition not mentioned in Statement A, these two statements are not inconsistent as to that fact. The holding in *Charles* talks of "prior inconsistent statements" not of "prior inconsistent silence." The majority's new rule would, in effect, convert Pitts' silence into a statement.

Given *Laury*'s controlling precedent in this Circuit, and the total absence of any recognition of the concept of "arguable inconsistency" by the Supreme Court, I cannot concur with the majority opinion. I do not think it is the role of this panel to create a new rule that results in a determination that there was no *Doyle* error, particularly in a case which is before us on habeas corpus collateral review.

Obviously, if I am right and there was *Doyle* error in this

---

[3]A figure of speech in which antithetical incongruous terms are combined. Webster's II New Riverside University Dictionary (1984).

20

case, we must then address the holding for which *Brecht* is best known and determine whether or not Pitts sustained his burden of showing that the *Doyle* error committed by the prosecutor in his state trial "had substantial and injurious affect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637, 113 S.Ct. at 1722. Upon reviewing the record as a whole, I conclude that there is adequate admissible evidence upon which a reasonable jury could find that the shooting was not an accident, as is contended by Pitts.

First, and foremost, Pitts' testimony that his rifle fired accidentally during a struggle with Pauline Smithinger (who grabbed his rifle and attempted to take it away from him) is directly contradicted by Smithinger's testimony. Smithinger testified that, while she did grab the rifle, Pitts slung her away from it and the shots came after she had turned loose of the rifle. The jury was presented, therefore, with a credibility choice between the two versions.

Furthermore, Pitts' actions after the shooting and before his arrest (proof of which are clearly admissible under *Brecht*) could reasonably lead the jury to conclude that the shooting was not an accident. Pitts did not seek help, he did not summon the police (although he had a CB radio in his truck), and he did not wait at the scene. Instead, he went back to his camp and hid the rifle which had fired the shot, which caused the wound that caused the victim to bleed to death.

Consequently, I conclude that the *Doyle* error which did occur

21

at Pitts' trial "did not substantially influence the jury's verdict" so as to entitle Pitts to relief.   This is the same conclusion which the trial court reached in denying Pitts any habeas corpus relief, and I would affirm on this same basis.